**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CIVIL DIVISION**

**Case No.:**

JUNEL POCHETTE, as Personal Representative
of the Estate of MARCIA MAY POCHETTE, and
DEVIN WOODS, as Personal Representative of
the Estate of JENICE MONIQUE WOODS,

     *Plaintiffs*,

       v.

CITY OF WEST PALM BEACH, a Florida
municipal corporation, AUSTIN DANIELOVICH,
individually, PIERRE ETIENNE, individually,
CHRISTOPHER REKDAHL, individually,
MICHAEL BORGEN, individually,
WILLIAM LOAYZA, individually,
BRANDAN STEDFELT, individually, and
DARIEN THOMAS, individually,

     *Defendants*.

_____/

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

COME NOW Plaintiffs, JUNEL POCHETTE, as Personal Representative of the Estate

of MARCIA MAY POCHETTE and DEVIN WOODS, as Personal Representative of the

Estate of JENICE MONIQUE WOODS, by and through their undersigned counsel and

hereby sue the CITY OF WEST PALM BEACH, a Florida municipal corporation, AUSTIN

DANIELOVICH, individually, PIERRE ETIENNE, individually, CHRISTOPHER

REKDAHL, individually, MICHAEL BORGEN, individually, WILLIAM LOAYZA, individually, BRANDAN STEDFELT, individually, DARIEN THOMAS, individually, and allege the following:

## JURISDICTIONAL ALLEGATIONS

1.    This is an action exceeding the jurisdictional threshold of $75,000.00 (seventy-five thousand dollars) and which seeks damages in excess of $10,000,000.00 (ten million dollars) for claims under both Florida law and federal law. Plaintiffs' state claims are presented pursuant to Florida Statutes §768.16 – §768.26 ("Florida Wrongful Death Act") and §768.28.

2.    Plaintiffs also assert federal claims and damages pursuant to 42 U.S.C. §§ 1983, 1985, 1988 and the United States Constitution.

3.    Plaintiffs hereby invoke supplemental jurisdiction of the United States District Court to adjudicate supplemental state tort claims arising under Florida law pursuant to 28 U.S.C. § 1367 and further invoke the jurisdiction of the United States District Court pursuant to 28 U.S.C. §§1331 and 1343.

## CONDITIONS PRECEDENT

4.    All conditions precedent to the prosecution of this action have occurred and/or have been performed, excused or waived.

5.    As a condition precedent to filing the present action, the Plaintiffs and/or Personal Representatives forwarded written notice pursuant to Fla. Stat. §768.28 to the City of West Palm Beach and the Florida Department of Financial Services.

## PARTIES

Plaintiffs are the legal personal representatives for the ESTATES OF MARCIA MAY POCHETTE [as named or Marcia] and JENICE MONIQUE WOODS [as named or Jenice], deceased individuals, whose wrongful deaths form the basis of this lawsuit.

6.     Defendant CITY OF WEST PALM BEACH [City or City Defendant] is a municipal corporation located in Palm Beach County, Florida, and is responsible for the actions of its agents, including duly sworn law enforcement officers and supervisors for the West Palm Beach Police Department. Defendants, AUSTIN DANIELOVICH, PIERRE ETIENNE, CHRISTOPHER REKDAHL, MICHAEL BORGEN, WILLIAM LOAYZA, BRANDAN STEDFELT, and DARIEN THOMAS [hereinafter, collectively Defendant Officers] were at all material times sworn law enforcement officers employed by the City of West Palm Beach Police Department and acting under color of state law and within the scope of their employment. These Defendants are sued in their individual capacities as their actions and inactions exhibited wanton and willful disregard of human rights, safety and property.

7.     Plaintiff, JUNEL POCHETTE, is the surviving husband of the decedent, MARCIA MAY POCHETTE, and has been appointed personal representative of the Estate of MARCIA MAY POCHETTE. Plaintiff, DEVIN WOODS, is the surviving husband of the decedent, JENICE MONIQUE WOODS, and has been appointed personal representative of the Estate of JENICE MONIQUE WOODS.

8. All acts and omissions material to this cause of action occurred within Palm Beach County, Florida.

## GENERAL ALLEGATIONS AND FACTS COMMON TO ALL COUNTS

9. On July 30, 2024, Marcia May Pochette and Jenice Monique Woods, were traveling home together in a motor vehicle after picking up food. Jenice was in her first trimester of pregnancy with no known medical complications.

10. Seven (7) law enforcement officers employed by the City of West Palm Beach Police Department: AUSTIN DANIELOVICH, PIERRE ETIENNE, CHRISTOPHER REKDAHL, MICHAEL BORGEN, WILLIAM LOAYZA, BRANDAN STEDFELT, and DARIEN THOMAS, were operating as members of the Department's specialized unit, including the Bike Team and the Gang and Habitual Offender Suppression Team (GHOST).[1]

11. Unbeknownst to Marcia and Jenice, these officers had initiated a vehicular pursuit, colloquially known within the Department as a "ghost chase", of another citizen, NEONI COPELAND [hereinafter Neoni], based solely on a non-criminal vehicular traffic infraction.

12. A "ghost chase" is a police tactic involving high-speed pursuit conducted with or without activation of low-visibility emergency lights, sirens, or notification to dispatch, in an intentional effort to evade departmental scrutiny and circumvent prohibitions against non-emergency or covert pursuits.

---

[1] GHOST police unit refers to specialized police details with a specific objective of utilizing low-visibility, subtle vehicles during field operations.

4

13.   Despite prohibitions under West Palm Beach Police Department policy and nationally accepted police practices, the seven (7) officers engaged in the high-speed pursuit of Neoni Copeland for a minor traffic infraction through congested and highly populated public roadways in Palm Beach County, reportedly reaching speeds exceeding 80 mph, and at times approaching and over 100 mph, with diminished visibility and heavy vehicular traffic, as well as in the opposite lane of travel.

14.   As a direct and foreseeable consequence of the officers' unlawful and reckless conduct, Neoni Copeland lost control of his vehicle and collided with the vehicle occupied by Marcia and Jenice at the intersection of North Congress Avenue and Meadows Boulevard in Boynton Beach, Palm Beach County, Florida.

15.   The violent force of the impact from Neoni Copeland's vehicle severely and fatally injured both Marcia and Jenice. Despite witnessing the catastrophic crash of Marcia's and Jencie's vehicle, and resulting injuries, none of the pursuing defendant officers stopped to render aid to Marcia and Jencie. In addition, despite the high-speed GHOST chase pursuit through multiple cities and for many miles, there was also no effort to seize or arrest Neoni Copeland. He fled the scene on foot following the crash and evaded initial apprehension.

16.   Despite the seven officers being fully aware of the grave injuries they had caused, failed to summon medical assistance, and also fled the crash scene without reporting it. Their body-worn cameras remained purposely inactive, and they also failed to notify dispatch and/or supervisor, in violation of departmental policy and officer

training requirements.

17. As a result of the officers' refusal to render or summon emergency medical assistance, Marcia and Jenice were left at the crash scene without receiving emergency medical aid and/or treatment, relying instead on calls to 911 made by unrelated civilian witnesses.

18. The delay in medical response caused by the officers' deliberate abandonment exacerbated the consequence of injuries and resulted in excruciating and prolonged suffering by Marcia and Jenice. Tragically, both women died from their injuries. Jenice's unborn child was also harmed by the collision which resulted in the traumatic termination of the pregnancy.

19. In further violation of departmental protocols and their sworn duties, none of the officers involved documented the pursuit, the crash, or their roles in the incident. There was no internal reporting, belated activation of body cameras, or completion of use-of-force or incident reports as required. The defendant officers implicitly and also expressly agreed to cover up or conceal the pursuit and their actions which caused the motor vehicle collision with Marcia and Jenice.

20. Pursuant to the West Palm Beach Police Department's written policies and training protocols, vehicle pursuits are expressly prohibited unless there is reasonable belief that the suspect has committed a "forcible violent felony," or comparable offense. Even in such limited circumstances, the policy requires officers to weigh the public safety risks of the pursuit against its necessity.

21.     Upon information and belief, however, a pattern of unauthorized pursuits has
emerged within the West Palm Beach Police Department as officers have attempted
to circumvent the department's vehicle pursuit policy. Public records disclose that
between 2000 and 2024, the department has been involved in numerous at-fault
vehicle collisions, some of which consist of serious injury and death, involving
officer negligence and recklessness, including incidents in which officers ran red
lights, entered intersections against the right of way, or drove in the wrong direction
on public roadways during these operations.

**HISTORICAL INCIDENTS**

a.      On **June 29, 2002**, officers of the West Palm Beach Police Department
engaged in a police pursuit, in an unmarked vehicle. This incident took place during
a narcotics operation. In this incident, a pursuit was initiated resulting in the target
vehicle slamming into a concrete utility pole at an estimated 100 plus mph, causing
a catastrophic crash. The driver lost a leg; another occupant lost parts of both legs
and the driver's girlfriend was killed in the resulting fire. This incident drew internal
affairs scrutiny and public attention; at least one officer resigned shortly after this
incident.

b.      On **May 21, 2012**, the decedent was riding a motorcycle when a city police
officer of the West Palm Beach Police Department observed him commit a minor
traffic infraction (changing lanes without signaling) from an unmarked police
vehicle. Without activating lights or siren, the officer initiated a high-speed
pursuit. During the chase, the officer caused his vehicle to collide with or otherwise

7

force the decedent's motorcycle off the road, leading the motorcycle to crash into a tree causing death from his injuries.[2]

c.      On **May 4, 2019**, West Palm Beach Police officers initiated a vehicle pursuit after two juvenile suspects stole a car at knifepoint. Officers located the stolen Hyundai and attempted a stop, but the driver fled at high speed, leading multiple WPBPD units on a dangerous chase through city streets. During the pursuit, the fleeing vehicle disregarded traffic controls and ultimately caused a violent three-car collision, seriously damaging multiple vehicles and resulting in injuries to the juvenile occupants. The pursuit originated from an unarmed property crime involving juveniles and nonetheless escalated into a high-risk chase that endangered innocent motorists.

d.      On **July 20, 2019**, West Palm Beach Police Quick Response Team (QRT) or Criminal Apprehension Team (CAT)[3] police officers initiated a traffic stop that immediately escalated into a dangerous, high-speed pursuit. Rather than comply, the driver accelerated and struck a vehicle, the fled at extreme speeds, swerving unpredictably across multiple lanes of travel. Officers pursued southbound onto Interstate 95, where the driver continued driving recklessly and, at one point, exceeded speeds of over 100 miles per hour, forcing other motorists to take evasive action. The pursuit continued until the driver exited at Southern Boulevard, where

---

[2] *Spencer v. City of West Palm Beach*, No. 15-CV-80019 (S.D. Fla.)
[3]  West Palm Beach Police unmarked or low-profile police unit were formally the Quick Response Team (QRT) or Criminal Apprehension Team (CAT).

the fleeing vehicle collided with a police unit, spun out, and became disabled, prompting the driver and his passenger to flee on foot before they were ultimately apprehended.

e.     On **August 27, 2020**, West Palm Beach police officers engaged in a high-speed pursuit of a stolen SUV which collided with an unmarked police vehicle during the attempted stop. The chase involved numerous police units, including both marked and unmarked vehicles, and continued at high speeds through the intersection of Palm Beach Lakes Boulevard and Forum Way near the Palm Beach Outlets in West Palm Beach, Florida.

f.     On **January 5, 2023**, West Palm Beach police detectives operating unmarked vehicles initiated a high-speed pursuit of a Ford Crown Victoria after the driver refused commands to stop and accelerated into officers. The driver immediately fled northbound through residential neighborhoods and commercial zones at unsafe speeds, including traveling the wrong way and forcing officers and uninvolved motorists to take evasive action to avoid serious injury. Throughout the chase, officers continued pursuit in darkened, unmarked units with emergency lights activated, despite clear and escalating risks to the public. The fleeing vehicle ultimately collided with a fire hydrant, caught fire, and crashed into a fence near the railroad tracks, ejecting the driver and injuring a West Palm Beach officer along with multiple civilians before additional officers arrived to apprehend the occupants.

## Timeline of High-Risk Vehicle Pursuits by the West Palm Beach Police Department

| Date | WPBPD Units Involved | Nature of Pursuit | Resulting Harm / Consequences |
|---|---|---|---|
| June 29, 2002 | Unmarked narcotics units | High-speed pursuit during undercover narcotics operation; officers engaged despite known risk | Vehicle crashed into concrete utility pole at **100+ mph**; driver **lost a leg**; passenger suffered catastrophic **limb loss**; girlfriend **killed in resulting fire**; internal affairs scrutiny; at least one officer resigned |
| May 21, 2012 | Unmarked patrol vehicle | Minor traffic infraction escalated into concealed, high-speed pursuit without emergency signals | Officer's intentional contact forced decedent's motorcycle into a tree, causing his **death from crash** injuries |
| May 4, 2019 | Multiple WPBPD units | Juvenile carjacking-related pursuit escalated into high speeds through city streets | **Three-car crash**; suspects injured; innocent motorists placed at significant risk despite lack of armed-threat justification |
| July 20, 2019 | QRT / CAT tactical units (unmarked) | Traffic stop escalated into prolonged **100+ mph** interstate pursuit | **Collision with police vehicle**; vehicle disabled after spinning out; passengers fled on foot; extreme risk posed to public on I-95 |
| August 27, 2020 | Both marked and unmarked units | Stolen vehicle pursuit: suspect struck an unmarked police unit during attempted stop | High-speed pursuit through densely traveled commercial corridor near Palm Beach Outlets; suspects fled on foot |
| January 5, 2023 | unmarked units | Driver struck officers and fled at high speeds through neighborhoods and commercial areas | Vehicle ignited and **crashed into fence/railroad property**; driver ejected; WPBPD officer injured; multiple civilians endangered |

## COUNT I

## WRONGFUL DEATH OF MARCIA MAY POCHETTE AGAINST THE CITY OF WEST PALM BEACH

Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-21 of this Complaint as if fully set forth herein.

22.    Plaintiff, JUNEL POCHETTE, is the duly appointed personal representative of the Estate of Marcia May Pochette, deceased.

23.    On July 30, 2024, Marcia was lawfully traveling in a vehicle when she was killed because of a high-speed collision caused by officers of the West Palm Beach Police Department during an unauthorized pursuit.

24.    The Defendant Officers, acting within the course and scope of their employment, initiated and engaged in a vehicular pursuit in direct violation of departmental policy prohibiting such actions under the circumstances.

25.    The officers' reckless conduct created a foreseeable and proximate risk of serious injury and death to innocent civilians, including Ms. Pochette.

26.    As a direct result of said conduct, Ms. Pochette suffered fatal injuries.

27.    The City of West Palm Beach is liable pursuant to Florida's Wrongful Death Act, §§ 768.16–768.26 and § 768.28, Fla. Stat., for the wrongful death of Ms. Pochette due to the negligence of its employees.

28.    The estate of the decedent seeks damages as a direct and proximate result of the Defendant Officers' actions to include, but not limited to: severe mental anguish, the loss of the decedent's companionship, guidance, and protection, and the loss of

11

support and services previously provided by Marcia May Pochette, funeral and burial expenses and the loss of prospective net accumulations of the estate had she survived the fatal incident.

**WHEREFORE**, Plaintiff, JUNEL POCHETTE, as personal representative of the Estate of Marcia May Pochette, demands judgment against the City of West Palm Beach for damages recoverable under the Florida Wrongful Death Act, together with fees and costs and any such further relief as the Court deems just.

**COUNT II**

**WRONGFUL DEATH OF JENICE MONIQUE WOODS AGAINST THE CITY OF WEST PALM BEACH**

Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-21 of this Complaint as if fully set forth herein.

29.    Plaintiff, DEVIN WOODS, is the duly appointed personal representative of the Estate of Jenice Monique Woods, deceased.

30.    On July 30, 2024, Jenice was lawfully traveling in a vehicle when she was killed because of a high-speed collision caused by officers of the West Palm Beach Police Department during an unauthorized pursuit.

31.    The Defendant Officers, acting within the course and scope of their employment, initiated and engaged in a vehicular pursuit in direct violation of departmental policy prohibiting such actions under the circumstances.

32.    The officers' reckless conduct created a foreseeable and proximate risk of serious injury and death to innocent civilians, including Ms. Woods.

33.     As a direct result of said conduct, Ms. Woods suffered fatal injuries.

34.     The City of West Palm Beach is liable pursuant to Florida's Wrongful Death Act,

        §§ 768.16–768.26 and§ 768.28, Fla. Stat., for the wrongful death of Ms. Woods due

        to the negligence of its employees.

35.     The estate of the decedent seeks damages as a direct and proximate result of the

        Defendant Officers' actions to include, but not limited to: severe mental anguish,

        the loss of the decedent's companionship, guidance, and protection, and the loss of

        support and services previously provided by Jenice Monique Woods, funeral and

        burial expenses and the loss of prospective net accumulations of the estate had she

        survived the fatal incident.

**WHEREFORE**, Plaintiff, DEVIN WOODS, as the personal representative of the Estate
of Jenice Monique Woods demands judgment against the City of West Palm Beach for
damages recoverable under the Florida Wrongful Death Act, together with fees and costs
and any such further relief as the Court deems just.

## COUNT III

### FAILURE TO RENDER AID BY DANIELOVICH, ETIENNE, REKDAHL, BORGEN, LOAYZA, STEDFELT, AND THOMAS AGAINST THE CITY OF WEST PALM BEACH COGNIZABLE UNDER FLORIDA LAW

        Plaintiff realleges and incorporates by reference the allegations set forth in
paragraphs 1-19 of this Complaint as if fully set forth herein.

36.     On July 30, 2024, the Defendant Officers caused a fatal vehicular collision by their

        own unlawful pursuit yet failed to summon emergency medical services to Marcia

        May Pochette and Jenice Monique Woods.

13

37.  Despite knowing Marcia May Pochette and Jenice Monique Woods sustained life-threatening injuries, the Defendant Officers deliberately failed to act, in contravention of both departmental training and department policy. The Defendant Officers had a duty to render medical aid and assistance. The officers breached this duty by deliberately and willfully disengaging their required body-worn cameras, avoiding radio communication, and failing to report the fatal incident involving Marcia May Pochette and Jenice Monique Woods.

38.  The Defendant Officers' failure to act resulted in Marcia's and Jenice's medical conditions worsening resulting in their immense suffering and was a proximate cause of their deaths.

39.  The Defendants Officers owed a duty to provide medical aid and assistance or secure such help once they caused and observed the crash and resulting injuries leading to death and had the means and authority to do so.

40.  The Estate of Marcia May Pochette seeks damages as a direct and proximate result of the Defendant Officers' deliberate, willful and negligent failure to render any medical aid following the collision including but not limited to: the loss of the decedent's companionship, guidance, and protection, and the loss of support and services previously provided by Marcia May Pochette, funeral and burial expenses and the loss of prospective net accumulations of the estate had she survived.

41.  The Estate of Jenice Monique Woods seeks damages as a direct and proximate result of the Defendant Officers' deliberate, willful and negligent failure to render any medical aid following the collision including but not limited to: the decedent's

conscious pain and suffering until death, loss of the decedent's companionship, guidance, and protection, and the loss of support and services previously provided by Jenice Monique Woods, funeral and burial expenses and the loss of prospective net accumulations of the estate had she survived.

**WHEREFORE**, Plaintiffs, JUNEL POCHETTE and DEVIN WOODS demand judgment against the City of West Palm Beach for compensatory damages, together with fees and costs and further relief as appropriate.

**COUNT IV**

**CLAIM AGAINST THE CITY OF WEST PALM BEACH COGNIZABLE UNDER 42 U.S.C. § 1983**

Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-21 of this Complaint as if fully set forth herein.

42.     The City of West Palm Beach maintained a repeated practice of permitting "ghost chases" and also high-speed pursuits wherein officers evaded official policies during vehicular pursuit by reckless operation of motor vehicles and/or failing to activate or utilize emergency lights, sirens, or radio transmissions.

43.     The department has maintained and permitted a widespread custom and practice of authorizing or acquiescing to unmarked, high-risk or reckless vehicular pursuits. In addition, the department's failure to enforce vehicular pursuit policy, train and supervise officer conduct, or discipline for repeated violations constitutes a municipal custom or policy under *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978).

44.    The department's policy or practice was a moving force behind the constitutional violations contributing to and causing deaths of Marcia May Pochette and Jenice Monique Woods.

45.    The City's deliberate indifference to the risk of injury and death resulting from the practice of authorizing or acquiescing to unmarked, high-risk or reckless vehicular pursuits; failing to enforce its vehicular pursuit policy; failing to train and supervise officer conduct; and/or failing to discipline for repeated violations resulting in unauthorized pursuits, gives rise to municipal liability cognizable under 42 U.S.C. § 1983.

46.    The estate of Marcia May Pochette seeks damages as a direct and proximate result of the Defendant Officers' actions but not limited to: the decedent's conscious pain and suffering until death, loss of the decedent's companionship, guidance, and protection, and the loss of support and services previously provided by Marcia May Pochette, funeral and burial expenses and the loss of prospective net accumulations of the estate had she survived the fatal incident.

47.    The estate of Jenice Monique Woods seeks damages as a direct and proximate result of the Defendant Officers' actions but not limited to: the decedent's conscious pain and suffering until death, loss of the decedent's companionship, guidance, and protection, and the loss of support and services previously provided by Jenice Monique Woods, funeral and burial expenses and the loss of prospective net accumulations of the estate had she survived the fatal incident.

**WHEREFORE**, Plaintiffs, JUNEL POCHETTE and DEVIN WOODS, demand judgment

against the City of West Palm Beach for all damages allowed under 42 U.S.C. § 1983, and reasonable attorneys' fees under § 1988.

**COUNT V**

**CONSPIRACY TO VIOLATE CIVIL RIGHTS AGAINST DANIELOVICH, ETIENNE, REKDAHL, BORGEN, LOAYZA, STEDFELT, AND THOMAS COGNIZABLE UNDER 42 U.S.C. §1985**

Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-19 of this Complaint as if fully set forth herein.

48. The Defendants reached an understanding and agreement, either explicitly or implicitly, to initiate an unauthorized pursuit, disengage required body-worn cameras, avoid radio communication, and refrain from reporting the fatal incident involving Marcia May Pochette and Jenice Monique Woods.

49. This agreement and coordinated inaction violated and was deliberately indifferent to Plaintiffs' constitutional rights.

50. As a result of Defendants' actions, the decedents endured immense physical suffering from their injuries, which contributed to and caused their death that otherwise may have been preventable.

51. The estate of Marcia May Pochette seeks damages as a direct and proximate result of the Defendant Officers' actions but not limited to: the decedent's conscious pain and suffering until death, loss of the decedent's companionship, guidance, and protection, and the loss of support and services previously provided by Marcia May Pochette, funeral and burial expenses and the loss of prospective net accumulations of the estate had she survived the fatal incident.

17

52.     The estate of Jenice Monique Woods seeks damages as a direct and proximate result

        of the Defendant Officers' actions but not limited to: the decedent's conscious pain

        and suffering until death, loss of the decedent's companionship, guidance, and

        protection, and the loss of support and services previously provided by Jenice

        Monique Woods, funeral and burial expenses and the loss of prospective net

        accumulations of the estate had she survived the fatal incident.

**WHEREFORE**, Plaintiffs, JUNEL POCHETTE and DEVIN WOODS, seek
compensatory and exemplary damages, attorneys' fees, and any other relief the Court
deems just and proper.

### COUNT VI

### FAILURE TO TRAIN AND SUPERVISE AGAINST THE CITY OF WEST PALM BEACH COGNIZABLE UNDER 42 U.S.C. § 1983

        Plaintiffs reallege and incorporate by reference the allegations set forth in
paragraphs 1-19 and 21 of this Complaint as if fully set forth herein.

53.     At all material times, the individually named Defendant Officers were employees

        of Defendant CITY OF WEST PALM BEACH, acting under color of state law and

        within the course and scope of their employment.

54.     Defendant CITY OF WEST PALM BEACH had a duty to adequately train and

        supervise its police officers, including Defendants AUSTIN DANIELOVICH,

        PIERRE ETIENNE, CHRISTOPHER REKDAHL, MICHAEL BORGEN,

        WILLIAM LOAYZA, BRANDAN STEDFELT, and DARIEN THOMAS, to

        prevent the violation of constitutional rights.

55. Defendant CITY OF WEST PALM BEACH failed to properly train and supervise its officers in the (a). the department's vehicular pursuit policy and the prohibition against pursuit in unmarked vehicles and high-speed chases for nonviolent offenses; (b). the use and activation of body-worn cameras and radio communication during pursuits; and (c). the duty to render or summon emergency medical assistance at the scene of a crash.

56. The failure to train and supervise resulted in the City's deliberate indifference to the known or obvious consequences of such failure, including the risk that its officers would engage in unconstitutional conduct.

57. This deliberate indifference is evidenced by prior complaints, documented incidents, or patterns of misconduct involving the City's officers and its failure to take remedial or corrective action.

58. The lack of adequate training and supervision was a moving force behind the constitutional violations that resulted in the deaths of Marcia May Pochette and Jenice Monique Woods.

59. As a direct and proximate result of Defendant City of West Palm Beach's failure to train and supervise, the wrongful deaths of their decedents are compensable under federal law.

60. The estate of the decedent seeks damages as a direct and proximate result of the Defendant Officers' actions but not limited to: the decedent's conscious pain and suffering until death, loss of the decedent's companionship, guidance, and protection, and the loss of support and services previously provided by Marcia May

19

Pochette, funeral and burial expenses and the loss of prospective net accumulations of the estate had she survived the fatal incident.

61.     The estate of the decedent seeks damages as a direct and proximate result of the Defendant Officers' actions but not limited to: the decedent's conscious pain and suffering until death, loss of the decedent's companionship, guidance, and protection, and the loss of support and services previously provided by Jenice Monique Woods, funeral and burial expenses and the loss of prospective net accumulations of the estate had she survived the fatal incident.

**WHEREFORE**, Plaintiffs, JUNEL POCHETTE and DEVIN WOODS, demand judgment against Defendant City Of West Palm Beach for compensatory damages, attorney's fees pursuant to 42 U.S.C. § 1988, costs, and any other relief this Court deems just and proper and demand a trial by jury on all issues so triable.

### COUNT VII

### NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DANIELOVICH, ETIENNE, REKDAHL, BORGEN, LOAYZA, STEDFELT, AND THOMAS

62.     Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1-19 of this Complaint as if fully set forth herein.

63.     On July 30, 2024, the Defendant officers engaged in conduct that was extreme, outrageous, and beyond the bounds of decency tolerated in a civilized society.

64.     Specifically, the Defendants initiated and executed a high-speed, unauthorized "ghost chase" in violation of departmental policy, despite knowing that such chases pose significant risks of serious bodily injury and death to the public, particularly in

congested areas.

65. After causing a violent vehicular collision that resulted in catastrophic injuries to Marcia May Pochette and Jenice Monique Woods, who was pregnant at the time, the Defendants fled the scene, failed to summon medical assistance, and took affirmative steps to conceal their involvement, including deactivating body-worn cameras and avoiding dispatch communication.

66. The Defendants' conduct exhibited deliberate indifference to human life and a willful disregard for the suffering of the victims, both of whom were left without medical aid or assistance until bystanders contacted emergency services.

67. This conduct was not only unlawful and unethical, but it was also calculated to evade accountability and responsibility for the injuries and deaths the Defendant Officers caused.

68. The surviving spouses of the decedents came to the scene of the horrific and fatal crash. Upon arrival, they were personally subjected to the devastation of the subject violent crash and further forced to see and witness their spouses fatally injured. Severe emotional distress and mental anguish was caused to be suffered by JUNEL POCHETTE and DEVIN WOODS upon their arrival to the tragic crash scene.

69. As a direct result of the Defendant Officers' extreme and outrageous reckless conduct, JUNEL POCHETTE and DEVIN WOODS, suffered severe emotional distress.

70. The conduct by the Defendants was negligent, intentional and/or carried out with reckless disregard of the probability of causing severe emotional distress and further

carried out with wanton and willful disregard of human rights, safety and property.

WHEREFORE, Plaintiffs, JUNEL POCHETTE and DEVIN WOODS, demand judgment against the CITY OF WEST PALM BEACH and the individual Defendant officers for compensatory damages, together with the fees and costs of this action and such other relief as the Court deems just and proper.

DATED THIS ___*10th*___ DAY OF DECEMBER, 2025.

*s/ Scott B. Smith*
Scott B. Smith, Esq.
Florida Bar No.: 158569
Smith, Ball, Báez & Prather Florida
Injury Lawyers
4400 PGA Blvd., Suite 800
Palm Beach Gardens, FL 33410
Tel: 561-675-0840
Fax: 561-675-0841
Email: ssmith@smithball.com
*Attorney for Plaintiffs*


*s/ Kevin R. Anderson*
Kevin R. Anderson, Esq.
Florida Bar No.: 0044857
Anderson & Welch, LLC
500 S. Australian Ave., 6th Flr.
West Palm Beach, FL 33401-6237
Tel: 561-832-3386
Fax: 561-820-4867
Email: kan@andersonandwelch.com
andewelch@andersonandwelch.com
*Attorney for Plaintiffs*

*s/ Jerome A. Stone, Jr.*
Jerome A. Stone, Esq.
Florida Bar No.: 57010
Law Offices of Stone & Capobianco, P.L.
219 SE Ocean Blvd
Stuart, FL 34994-2218
Tel: 772-781-4357
Fax: 772-781-4340
Email: jas@stonelawfl.com
*Attorney for Plaintiffs*


*s/ Linda E. Capobianco*
Linda E. Capobianco, Esq.
Florida Bar No.: 121916
Law Offices of Stone & Capobianco, P.L.
219 SE Ocean Blvd
Stuart, FL 34994-2218
Tel: 772-781-4357
Fax: 772-781-4340
Email: lec@stonelawfl.com
*Attorney for Plaintiffs*