**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
West Palm Beach Division

Case No. 25-cv-81544-AMC

JUNEL POCHETTE, individually and as
Personal Representative of the Estate of
MARCIA MAY POCHETTE, et al.,

      Plaintiffs,

v.

CITY OF WEST PALM BEACH, et al.,

      Defendants.

_____/

**DEFENDANT CITY OF WEST PALM BEACH'S REPLY**
**IN SUPPORT OF THE CITY'S MOTION TO DISMISS**

The Defendant, the CITY OF WEST PALM BEACH ("City") by and through its undersigned counsel, and pursuant to Federal Rules of Civil Procedure ("FRCP"), hereby files its Reply to Plaintiffs' Response in Opposition and in support of its Motion to Dismiss.

### PLAINTIFFS MAY NOT AMEND THEIR SECOND AMENDED COMPLAINT VIA RESPONSE

In their response, Plaintiffs attempt to now federalize state law negligence claims by affixing a constitutional label - the Fourteenth Amendment. ECF No. 63 at 10, 12-3. Plaintiffs never asserted the Fourteenth Amendment (or even mentioned substantive due process) in their Second Amended Complaint ("SAC") [ECF No. 7] and may not do so now via response. The proper procedure to assert a new claim was to amend the complaint in accordance with FRCP 15(a) – but Plaintiffs chose not to. See *Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1315 (11th Cir. 2004). A plaintiff may not amend their complaint through argument in an opposition brief. *Id. See Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018) (holding Plaintiff may not move to amend their complaint within a motion to dismiss opposition memorandum).

Plaintiffs never asserted a Fourteenth Amendment violation, because if pled, under the "shocking the conscience" legal standard, state law tort liability against the City is foreclosed under Florida Statute 768.28(9). One factual path legally closes the other.[1]

I.  **Plaintiffs' Belated Fourteenth Amendment Reference Fails Under *County of Sacramento v. Lewis* and its Eleventh Circuit Progeny.**
    a.  **Fourteenth Amendment Standard.**

Not waiving Plaintiffs' deficient pleading, the City replies to the newly alleged Fourteenth Amendment violation. The standard used to determine whether an official's actions violate substantive due process is "narrowly interpreted and applied." *L.S. ex rel. Hernandez v. Peterson*,

---

[1] The Supreme Court has made pellucid that a Fourteenth Amendment constitutional violation cannot be met via "customary tort liability" because it is not "sufficiently shocking conduct;" hence, "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Lewis*, 523 U.S. 833, 848-9 (1998).

982 F.3d 1323, 1330 (11th Cir. 2020). "'Only the most egregious official conduct' qualifies under this standard, so 'even intentional wrongs seldom violate the Due Process Clause.'" *Id*. Stated differently, the Fourteenth Amendment is not a "font of tort law" that can support novel federal causes of action. *Id.* at 1330 (citations omitted). "Determinations of what is egregious conduct must not be made in the glow of hindsight; decisions made by a government actor *must be egregious—that is, shock the conscience—at the time the government actor made the decision.*" *Waddell v. Hendry Cty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003)(emphasis added).

The Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process. *Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998); *See Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 128 (1992)("[W]e have previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law."); *Daniels v. Williams,* 474 U.S. 327, 335–36 (1986) (holding "common-law duties owed by government actors" are not "constitutionalized by the Fourteenth Amendment" and thus the Constitution afforded no remedy for "negligence" even if that claim was redressable under state law). *Lewis* holds that in a high-speed chase context, "only a purpose to cause harm unrelated to the legitimate object of arrest" satisfies the "shocks the conscience" standard; deliberate or reckless indifference does not. 523 U.S. 833 (1998).

The Eleventh Circuit has consistently held a police officer speeding without lights nor siren during a non-emergency pursuit which resulted in a death does not rise to the level of a

3

constitutional deprivation. *Rooney v. Watson*, 101 F.3d 1378, 1379, 1381 (11th Cir. 1996) citing to *Cannon v. Taylor,* 782 F.2d 947 (11th Cir.1986).[2]

In *Rooney*, the Eleventh Circuit explained:

Deputy Watson's single accident, whether we characterize it as negligence or even gross negligence causing the Rooneys' harm, does not amount to a constitutional deprivation . . . . [W]e do not believe that any alleged negligence on Deputy Watson's part amounts to a constitutional deprivation simply because he was speeding in the absence of an emergency response or police pursuit. Perhaps his driving at a high rate of speed in a non-emergency or non-pursuit situation reveals gross negligence rather than negligence, but [any gross negligence] does not transform a state tort claim into a constitutional deprivation under the circumstances of this case. Therefore, in the absence of a constitutional deprivation, the Rooneys cannot sustain a cause of action against Watson [or the County] under section 1983.

*Id.* at 1381.

In this case, as in *Rooney*, a high speed reckless or grossly negligent traffic accident—as unfortunate as the outcome was in this case—does not sound under the Constitution. *See id.* The result is undoubtedly tragic; however, none of these facts reach the level of "shock the conscience" of the Court required for a substantive due process claim – nor have they been pled by Plaintiffs.

### b.  Plaintiffs Do Not Plead the "Purpose-To-Cause-Harm" Standard.

Plaintiffs' new Fourteenth Amendment reference at most alleges negligence or recklessness and not the *Lewis* required purpose to cause harm unrelated to arrest standard. To reach the "conscience-shocking" threshold, the conduct generally must be "intended to injure in some way unjustifiable by any government interest." *Davis v. Carter*, 555 F.3d 979, 982 (11th Cir. 2009) (quoting *Lewis*, 523 U.S. 833, 849 (1998)). Policy violations, use of an unmarked vehicle, lack of radio communications, or failures to activate cameras do not plausibly show an intent-to-

---

[2] An inquiry into a governmental entity's custom or policy is relevant only when first a constitutional deprivation has occurred. *Rooney at* 1381; *See Vineyard v. County of Murray, Ga.,* 990 F.2d 1207, 1211 (11th Cir. 1993).

harm purpose, and the SAC never alleges Officer Defendants acted to cause harm for reasons unrelated to apprehension.

### c.   Plaintiffs' Cited Cases are Inapplicable in the Eleventh Circuit Pursuit Context.

Plaintiffs' reliance on non-Eleventh Circuit authority is misplaced. *Estate of Soakai v. Abdelaziz* involved denial of qualified immunity where officers allegedly acted with an *intent to harm* a fleeing suspect unrelated to any legitimate law enforcement purpose, which is consistent with *County of Sacramento v. Lewis*. 137 F.4th 969, 976 (9th Cir. 2025) (emphasis added). *Sauers v. Borough of Nesquehoning* likewise addressed a Fourteenth Amendment qualified immunity analysis applying the "shocks the conscience" standard which may only be met when an officer has an "intent to cause harm." 905 F.3d 711, 717 (3rd Cir. 2018). Neither case helps Plaintiffs because they never pled a Fourteenth Amendment violation nor invoked the applicable legal standard. See *Shaw v. City of Norman*, No. 22-6106, 2023 WL 2923962, at *6 (10th Cir. 2023) (holding Plaintiffs fail to state a substantive-due-process claim because they do not allege that [officer] Lauderback had time to deliberate or that he intended to harm anyone—at most, they allege that he acted recklessly during a high-speed chase).

### d.   Plaintiffs Fail to Demonstrate Similar Prior Constitutional Violations.

A municipal "custom" requires a persistent, widespread practice of similar constitutional violations sufficient to put policymakers on notice, something Plaintiffs do not plausibly allege. Plaintiffs' response merely regurgitates the SAC. The six cited West Palm Beach Police pursuits over 21 years are heterogeneous, not adjudicated constitutional violations, often involve no third-party injury, and are not tied to any "ghost chase" theory, so they cannot establish notice for *Monell* purposes.[3] See *Brooks v. Scheib*, 813 F.2d 1191, 1192–93 (11th Cir. 1987)(unsubstantiated

---

[3] Plaintiffs' new allegation of an "unauthorized high-speed pursuit" in their response is untimely, improper, and incorrect. ECF No. 63 at 25. The cited incident involved a "failure to yield," during which WPBPD officers activated

complaints do not constitute notice); *Rincon v. Miami-Dade Cnty.*, 2020 WL 7344633, at *10 (S.D. Fla. 2020)(dismissing Monell claim based on sparse, dissimilar incidents); *Whitaker v. Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1321 (S.D. Fla. 2015)(holding same).

### e. Plaintiffs Fail to Demonstrate a Deliberate Failure to Train or Supervise.

Again, Plaintiffs' response largely repeats the SAC and still fails to allege the pattern of similar constitutional violations ordinarily required to plead deliberate indifference for § 1983 failure to train or supervise claims. *Whitaker*, 126 F. Supp. 3d at 1321. They identify no prior constitutional violations by untrained or unsupervised employees causing similar crashes, nor facts showing the City was on notice of a specific training or supervision deficiency and deliberately chose not to act. *Gold v. City of Miami*, 151 F.3d 1346, 1350–51 (11th Cir. 1998); *City of Canton v. Harris*, 489 U.S. 378, 389–90 (1989).[4]

## II.     Plaintiffs' State Law Claims Do Not Defeat Sovereign Immunity Under § 768.28(9)(a)

Plaintiffs contend Rule 8(d) permits them to plead negligence "and/or" wanton and willful conduct and that the Court must leave the § 768.28(9)(a) threshold to a jury, but the SAC repeatedly makes "reckless," "wanton," and "willful" conduct the core theory and expressly reincorporates paragraph 8 into the City counts, alleging the Officer Defendants acted "negligent and/or exhibited wanton and willful disregard of human rights, safety and property," while also describing a "rogue, dangerous, high-speed" pursuit "in a reckless and wanton and willful disregard" and repeating those descriptors throughout the operative City counts. ECF No. 7 ¶¶ 8, 35, 39, 55, 60-3, 122, 170-2, 174, 211, 224, 238, 310, 312, 317, 324, 326-7, 329, 388, 436-8, 440,

---

their lights, sirens, and body-worn cameras and, once the stolen vehicle fled, immediately pulled their vehicles off the road. Additionally, the incident was called into the WPBPD. Mr. Pierre Etienne was not involved in the attempted stop or subsequent "failure to yield."

[4] Plaintiffs concede they are not advancing a "ratification" theory of *Monell* liability. ECF No. 63 at 18.

477, 491, 505, 577, 579, 584; hereinafter ECF No. 7 at Composite. Rule 8(d) does not insulate Plaintiffs from the consequences of pleading facts that, on their face, trigger § 768.28(9)(a).

Florida law encourages resolution of Sovereign Immunity at the motion to dismiss stage where the defense appears on the face of the complaint and dismissal is a question of law. *City of Gainesville v. State, Dep't of Transp.*, 778 So. 2d 519, 522 (Fla. 1st DCA 2001). Whether conduct reflects disregard for human rights may be decided as a matter of law or by the factfinder depending on the pleaded facts. *Ross v. City of Jacksonville*, 274 So. 3d 1180, 1183 (Fla. 1st DCA 2019); *McGhee v. Volusia Cty.*, 679 So. 2d 729, 733 n.7 (Fla. 1996). A plaintiff cannot avoid Sovereign Immunity when the supporting facts appear within the four corners of the complaint. *Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP*, 137 So. 3d 1081, 1089 (Fla. 3rd DCA 2014). Courts should address § 768.28(9)(a) as early as possible because sovereign immunity is immunity from liability and suit. *Gualtieri v. Pownall*, 346 So. 3d 84, 88 (Fla. 2nd DCA 2022) (citing *Fla. Highway Patrol v. Jackson*, 288 So. 3d 1179, 1185 (Fla. 2020)). As such, it is proper for the Court to determine the City's Sovereign Immunity at the motion to dismiss stage.

a. **Plaintiffs' Response Fails to Address the City's Sovereign Immunity.**

Plaintiffs' response does not refute the City's motion to dismiss, which correctly explains that "reckless" conduct is treated as "wanton/willful" conduct for purposes of § 768.28(9)(a). *Williams v. City of Minneola*, 619 So. 2d 983, 986 (Fla. 5th DCA 1993). Plaintiffs' reliance on *Creamer v. Sampson* is misplaced as *Creamer* did not hold that the character of a pursuit cannot be determined at the pleading stage, but rather held proximate causation could not be resolved on the pleadings under that case's specific facts. 700 So. 2d 711, 713 (Fla. 2nd DCA 1997). Likewise, Plaintiffs' "jury question" cases (*Strong*, *Martinez*, *Knowles*, *McGhee*) do not control here because they neither require jury resolution in every case nor hold that sprinkling negligence language

7

preserves claims where the complaint affirmatively pleads reckless/wanton/willful conduct against the City and incorporates those allegations into the City counts. Plaintiffs cannot press "recklessness" as their theory while avoiding the statutory consequence that such conduct falls outside the State's waiver of liability.

### b. Plaintiffs' Fail to Salvage the State Law Counts.

Plaintiffs' reliance on *City of Pinellas Park v. Brown*, 604 So. 2d 1222 (Fla. 1992), to label pursuit conduct "operational" misses the point: *Pinellas Park* did not address § 768.28(9)(a)'s separate immunity for wanton/willful conduct and does not support municipal liability where, as here, Plaintiffs plead reckless/wanton/willful conduct that triggers § 768.28(9)(a)'s bar. Additionally, *Pinellas Park* has been substantially limited by statute and *Ross v. City of Jacksonville*, which held the duty recognized in *Pinellas Park* was broader than the legislature's duty of care in § 768.28(9)(d)(1) and cannot override the legislature's authority to define sovereign immunity. 274 So. 3d 1180 (Fla. 1st DCA 2019).

### c. Counts 9 and 45: Failure to Render Aid.

It is undisputed Mr. Neoni Copeland tragically crashed with the decedents – not the Officer Defendants. It is undisputed the City's motion to dismiss invoked Florida's Duty to Render Aid Statute, 316.062(1)(2024). Plaintiffs do not reply to the City's argument but instead cite Florida Statute 316.027. Plaintiffs further cite cases where vehicle crashes never occurred. ECF No. 63 at 8-9. For failure to render aid claim, Florida courts construe "involved in a crash" to require a collision. *Rivera v. Randle E. Ambulance Serv., Inc.,* 393 So.2d 605, 606 (Fla. 3rd DCA 1981);

*Daugherty v. State*, 207 So.3d 980, 981 (Fla. 5th DCA 2016).[5] As such, the failure to render aid counts should be dismissed with prejudice.

### III.      Plaintiff's Negligence Claims are Subsumed into the Wrongful Death Act Claims.

Plaintiff's claims for negligence causing the death of the decedents (Counts 9, 35, 36, 45, 71, and 72) fail because they are subsumed into Plaintiff's Florida's Wrongful Death Act ("FWDA") claims (Counts 1 and 37).

"Under Florida law, '[w]hen a personal injury to the decedent results in death, *no action for the personal injury shall survive*, and any such action pending at the time of death shall abate.'" *Groover v. Polk Cty. Bd. of Cty. Commissioners*, 570 F. Supp. 3d 1134, 1153–54 (M.D. Fla. 2021) (citing Fla. Stat. § 768.20) (emphasis added). "[A]lternative theories of relief [are] subsumed in the wrongful death claim, and no claim, other than the statutory wrongful death claim, [can] be brought or require[s] consideration by the district court." *Id.* at 1153-54 (quoting *Mucciolo v. Boca Raton Reg'l Hosp., Inc.*, 824 F. App' x 639, 643–44 (11th Cir. 2020)) ("[A]ny personal injury claims alleging wrongdoing that ultimately resulted in the death of the decedent are extinguished upon death, leaving the statutory wrongful death claim as the only avenue for damages against the tortfeasor."); *see also Banuchi v. City of Homestead*, No. 20-25133-Civ-Scola, 2021 WL 2333265, at *7 (S.D. Fla. June 8, 2021) (Scola, J.) (holding Florida's Wrongful Death Act precluded personal injury torts where defendant's actions resulted in decedent's death); *Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1378 (S.D. Fla. 2013) (Lenard, J.) (quoting *Niemi v. Brown & Williamson Tobacco Corp.*, 862 So. 2d 31, 33 (Fla. 2nd DCA 2003)) ("[W]hen death is the result of a personal injury, the law

---

[5] Even in *Gaulden v. State*, 195 So. 3d 1123, 1128 (Fla. 2016), the Florida Supreme Court held "we hold that the operative phrase "any vehicle involved in a crash" *means that a vehicle must collide with another vehicle, person, or object.* (emphasis added).

of Florida essentially substitutes a statutory wrongful death action for the personal injury action[.]").

In this case, the Plaintiff's claims are predicated upon the Officer Defendants' conduct during a pursuit which ultimately led to the death of the decedents. *See generally* SAC at ¶¶ 10-38. Accordingly, the FWDA precludes the Plaintiff's "personal-injury type tort claims" in Counts 9, 35, 36, 45, 71, and 72, as they are subsumed into Plaintiff's FWDA claims in Counts 1 and 37 because each duplicative claim alleges conduct that ultimately resulted in the decedents deaths. *Groover v. Polk Cty. Bd. of Cty. Comm'rs*, 570 F. Supp. 3d at 1153–54 ("Plaintiffs' alternative theories for personal injury relief are 'subsumed in the wrongful death claim' here because Plaintiffs are alleging that the personal injury serving as the basis for their tort claims was the cause of Hamilton's death."). As such, said counts are due to be dismissed with prejudice.

IV.     **Counts 35, 36, 71, 72: State Law Negligent Training and Supervision Claims Are Barred By Plaintiffs' Pled Scope of Employment.**

Plaintiffs allege that the Officer Defendants were acting within the course and scope of their employment with the City and concede the same in their response. ECF No. 7 ¶ 8; ECF No. 63 at 22-23. Florida law claims for negligent supervision, retention, or training require that the employee's tortious conduct occurred *outside* the course and scope of employment. *See Acts Retirement-Life Communities, Inc. v. E.B.O.*, 206 So.3d 112, 115 (Fla. 4th DCA 2016)(holding necessary the actions of the employee be performed outside employment scope). As such, Counts 35, 36, 71, and 72 should be dismissed with prejudice.

V.     **Counts 27 and 63: NIED Counts Fail the Impact Rule and Bystander Exception.**

Plaintiffs concede there was no physical impact and cite no case law to refute the City's motion to dismiss. ECF No. 63 at 21-2. As such, Counts 27 and 63 should be dismissed with prejudice.

## PLAINTIFFS' EMBEDDED REQUEST TO FILE A FOURTH COMPLAINT IS IMPROPER AND SHOULD BE STRICKEN/DENIED.

The Plaintiffs have not motioned this Court to amend and any such embedded reference in their response is improper and should be stricken or denied. ECF No. 63 at 24-5. *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) (holding court's denial for leave to amend proper when Plaintiff's request for leave to file an amended complaint was simply imbedded within an opposition memorandum.); *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1222 (11th Cir. 1999) (holding dismissal proper where Plaintiffs never filed a motion for leave to amend the complaint and instead, in one of their memoranda wrote: "If necessary, plaintiffs respectfully request that the Court provide them with an opportunity to file an amended complaint.").

The Federal Rules require that any "application to the court for an order shall be by motion which ... shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought." *Posner* at 1222; FRCP 7. Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly. *Posner* at 1222.

## CONCLUSION

Plaintiffs have now had three bites at the apple and the apple is gone. For the foregoing reasons, and based on Plaintiffs' failure to plead a cognizable Fourteenth Amendment claim, the bar of sovereign immunity under section 768.28(9)(a), the subsumption of duplicative negligence theories into the Florida Wrongful Death Act, the legal deficiencies in the negligent training and supervision counts given the pled scope of employment, and the failure of the NIED counts under the impact rule, the City respectfully requests that the Court grant its motion and dismiss all claims against the City with prejudice. The City further requests such other relief as the Court deems just and appropriate consistent with this Reply.

11

Date: June 25, 2026

Respectfully Submitted,

OFFICE OF THE CITY ATTORNEY
CITY OF WEST PALM BEACH
401 Clematis Street, Fifth Floor
West Palm Beach, FL 33401
(561) 822-1353 (telephone)
(561) 822-1373 (facsimile)

By: */s/ANDREW B. CARRABIS*
Andrew Brett Carrabis
Senior Assistant City Attorney
Fla. Bar No. 89782
*Attorney for Defendant City of West Palm Beach*

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of June, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all registered counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ANDREW B. CARRABIS*
Andrew Brett Carrabis
Fla. Bar No. 89782