**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
WEST PALM BEACH DIVISION

Case No. 25-cv-81544-JTK

JUNEL POCHETTE, individually and as
Personal Representative of the Estate of
MARCIA MAY POCHETTE, et al.,

     Plaintiffs,

v.

CITY OF WEST PALM BEACH, et al.,

     Defendants.

_____/

**DEFENDANT CITY OF WEST PALM BEACH'S MOTION TO DISMISS**
**PLAINTIFF'S THIRD AMENDED COMPLAINT WITH PREJUDICE**

Date: August 14, 2026

Respectfully Submitted,

OFFICE OF THE CITY ATTORNEY
CITY OF WEST PALM BEACH
401 Clematis Street, Fifth Floor
West Palm Beach, FL 33401
(561) 822-1353 (telephone)
(561) 822-1373 (facsimile)

By: */s/ANDREW B. CARRABIS*
Andrew Brett Carrabis
Senior Assistant City Attorney
Fla. Bar No. 89782
*Attorney for Defendant City of West Palm Beach*

The Defendant, the CITY OF WEST PALM BEACH ("City") by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), hereby files its Motion to Dismiss the Plaintiffs' Third Amended Complaint With Prejudice ("TAC") [ECF No. 70]. For the reasons cited herein, this Motion should be granted.

## INTRODUCTION

Plaintiffs' TAC attempts to bring Fourteenth Amendment *Monell* claims against the City. Along with the state law claims, the federal *Monell* claims fail, as a matter of law. To survive this motion to dismiss, the Fourteenth Amendment counts must allege the individually named defendants (collectively "Officer Defendants") had a purpose to cause harm to decedents which was unrelated to the legitimate object of arrest. This, Plaintiffs do not plead.

The TAC does not plead the Officer Defendants had a purpose to cause harm to decedents unrelated to the legitimate object of arrest in Officer Defendants' vehicle pursuit of Mr. Neoni Copeland. Plaintiffs do not cite to a <u>single</u> prior City Fourteenth Amendment case which was deemed unconstitutional with a purpose to cause harm unrelated to the legitimate object of arrest. As tragic as the subject case is, the TAC falls significantly short of pleading the necessary allegations to "plausibly suggest" the necessary elements for 1983 *Monell* claims. The TAC does not surpass speculation, needed stacked inferences, and legal conclusions.

In all the Plaintiffs' federal counts against the City, the "*Monell* standard" as set forth below must be applied. It requires rigorous standards of culpability and causation to ensure that the municipality is not held liable solely for the actions of its employees. *McDowell v. Brown*, 392 F.3d 1283, 1291 (11th Cir. 2004). In all federal counts, Plaintiffs must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the

violation. *Id*. at 1289. As such, in this case, Plaintiffs must show (1) an underlying Fourteenth Amendment violation; (2) the City had a widespread custom or policy that constituted deliberate indifference to that Fourteenth Amendment constitutional right; and (3) that policy or custom caused the Fourteenth Amendment constitutional violation.

In *County of Sacramento v. Lewis,* 523 U.S. 833 (1998), the Supreme Court explained that the critical factor in determining whether an officer violated the Fourteenth Amendment's guarantee of substantive due process in a vehicle pursuit was whether the officer's conduct shocked the conscience, which occurs when a plaintiff shows that the officer had "a purpose to cause harm unrelated to the legitimate object of arrest." *White v. Polk Cnty.*, 207 Fed.Appx 977, 978-9 (11th Cir. 2006)[1]; *See Lewis* at 1711–12; *see also id.* at 1720 (explaining that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under [section] 1983"); *See id.* at 1721 (concluding that "[r]egardless whether [initiating a high-speed chase] offended the reasonableness held up by tort law or the balance struck in law enforcement's own codes of sound practice, it does not shock the conscience, and [defendants] are not called upon to answer for it under [section] 1983").

Under *Monell*, "[t]here can be no policy-based liability or supervisory liability when there is no underlying constitutional violation." *Cantrell v. McClure*, 805 F. App'x 817, 822 (11th Cir. 2020) (citing *Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 821 (11th Cir. 2017)).

<u>ALLEGED FACTS SUPPORTING DISMISSAL OF THIRD AMENDED COMPLAINT</u>

Plaintiffs Junel Pochette ("Pochette") and Devin Woods ("Woods") (collectively "Plaintiffs"), in their capacities as personal representatives, bring 42 U.S.C. § 1983 *Monell* claims

---

[1] The facts of *White* are similar where an officer engaged in a vehicle pursuit at over 100 miles per hour for more than 15 miles resulting in the death of the passenger – no Fourteenth Amendment violation.

under the Fourteenth Amendment against the City for an alleged "purpose to cause harm" vehicle pursuit, along with Florida state law tort claims under the Florida Wrongful Death Act ("FWDA"), negligent retention, training, and supervision.

1.      On July 30, 2024, Officer Defendants were sworn law enforcement officers employed by and working for the City within the course and scope of their employment. (emphasis added). TAC ¶ 8. On July 30, 2024, at approximately 8:10 p.m., decedents were traveling home together in a motor vehicle in Boynton Beach. TAC ¶ 10. Of note, while Plaintiffs characterize this vehicle pursuit as a "GHOST" pursuit, Officer Austin Danielovich was the driver of a black and white marked West Palm Beach Police Department ("WPBPD") vehicle. TAC ¶¶ 13-4, 28.

2.      The Officer Defendants initiated an unlawful and dangerous high speed vehicular pursuit of Mr. Neoni Copeland, based on a "vehicular traffic infraction" starting on 45th Street, in West Palm Beach, Florida. (emphasis added). TAC ¶¶ 21, 27.[2] Despite City prohibitions, policies, and nationally accepted police practices, the Officer Defendants engaged in a high-speed pursuit of Mr. Neoni Copeland for a traffic violation, approaching 118 miles per hour, with diminished visibility and heavy traffic, driving in the opposite lanes of travel. TAC ¶ 23.

3.      After a pursuit from West Palm Beach, onto and off Interstate 95, and then into another city, Mr. Neoni Copeland lost control of his vehicle and collided with the occupied vehicle of decedents at the intersection of North Congress Avenue and Meadows Boulevard, in Boynton Beach, Florida. TAC ¶¶ 23-5. After the fatal crash between Mr. Neoni Copeland and the decedents, the Officer Defendants failed to provide medical assistance, fled the crash scene, did not turn on their body-worn cameras ("BWC"), notify dispatch or a supervisor, all in violation of City policy and training requirements. TAC ¶ 27, 30-31. The delay in medical response caused by Officer

---

[2] As will be explained below, Plaintiffs plead the Officer Defendants initiated the vehicle pursuit for a legitimate law enforcement objective – a traffic violation.

Defendants exacerbated the consequence of injuries and resulted in Ms. Pochette's and Ms. Woods' death. TAC ¶ 33. In further violation of City protocols, none of the Officer Defendants documented the pursuit, crash, or their roles in the incident. TAC ¶ 34.

4.      On June 23, 2025, the City found the Officer Defendants violated at least ten (10) City policies. TAC ¶¶ 37, 41, 43. Pursuant to the City's policy/training, absent a forcible felony or narrow settings requiring supervisor approval, vehicle pursuits are prohibited. TAC ¶ 38. The Officer Defendants were criminally charged by the Office of State Attorney, Fifteenth Judicial Circuit, case number 50-2025-CF-004488, with Leaving the Scene of a Crash Involving Death and/or Official Misconduct. TAC at FN 4. Without facts to support its claim, Plaintiffs allege a pattern of unauthorized pursuits has emerged within the WPBPD as officers have attempted to circumvent the department's vehicle pursuit policy. Plaintiffs cite to eight (8) documented WPBPD vehicle pursuits over a 22-year period – none of which were alleged for a "purpose to cause harm unrelated to the legitimate object of arrest" in violation of the Fourteenth Amendment. TAC ¶¶ 39, 91-5.[3] The TAC mentions various reports none of which even mention City Fourteenth Amendment "purpose to cause harm" vehicle pursuit violations.[4] TAC ¶ 77, 84-6, 99.

5.      Plaintiffs cannot, and do not, cite substantially similar prior vehicle pursuits with a purpose to cause harm unrelated to the legitimate object of arrest which violated the Fourteenth Amendment, as required for *Monell*. For the following reasons, this Motion should be granted.

---

[3] Plaintiffs' allege a lack of discipline by the City, but also cite City discipline to the Officer Defendants in the form of internal affairs investigations, written reprimands, suspensions, and training for vehicle pursuits. TAC ¶ 91-5

[4] The Eleventh Circuit recently addressed this supposition of BWC conclusory *Monell* pleading. In affirming summary judgment to the City of Atlanta, the Eleventh Circuit held there must be "evidence of a pattern of similar constitutional violations (i.e., uses of excessive force) driven by the failure of City police officers to use or activate their body-worn cameras." *Edwards v. Grubbs*, 179 F.4th 909, 929-930 (11th Cir. 2026) (emphasis added). Plaintiffs plead no ultimate facts that the use/nonuse of BWC's was the driving force of "purpose to cause harm" Fourteenth Amendment violation.

## MEMORANDUM OF LAW IN SUPPORT
### STANDARD OF REVIEW

A well-pleaded complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Legal conclusions, under this standard, "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Lastly, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678. A court may not assume that plaintiff can prove facts that it has not alleged or that defendant has violated laws in ways that have not been alleged. *Purvis v. City of Orlando*, 273 F. Supp. 2d 1321, 1324 (M.D. Fla. 2003). Nor is the Court bound to accept as true legal conclusions couched factual allegations. *B.H. Papasan v. Allain,* 106 S.Ct. 2932 (1986).

### COUNTS 1 (MARCIA POCHETTE) AND 23 (JENICE WOODS) PLAINTIFFS' WRONGFUL DEATH ACT COUNTS AGAINST THE CITY

In Counts 1 and 23, Plaintiffs bring Florida state law tort claims for wrongful death ("FWDA") against the City. Taken as a whole, Plaintiffs' TAC illustrates one glaring allegation – that the Officer Defendants engaged in a rogue, dangerous, reckless, high-speed, vehicular pursuit in violation of over 10 City policies in a reckless and wanton and willful disregard of human rights, safety, or property. After a traffic violation by Mr. Neoni Copeland, Officer Defendants initiated a pursuit in excess of 118 miles per hour, with diminished visibility and heavy traffic, in the opposite lanes of travel. As such, under Florida Statutes 768.28(9)(a)(2024), the City should be granted sovereign immunity.

6

"As the Supreme Court has instructed, sovereign immunity should be dealt with by the Court at the earliest opportunity." *Nicholson v. City of Miami*, No. 1:22-CV-21268-JLK, 2022 WL 17073684, at *3 (S.D. Fla. Nov. 17, 2022) (King, J.). "[W]hether an act was committed with malicious purpose, bad faith, or with wanton and willful disregard is not a question that must be submitted to a jury, but rather, can be decided by the Court depending on the facts." *Blue v. Miami-Dade Cnty.*, No. 10-23599-CIV, 2011 WL 2447699, at *2 (S.D. Fla. June 15, 2011) (citing *Prieto v. Malgor*, 361 F.3d 1313, 1320 (11th Cir. 2004)). Courts have found municipalities are entitled to sovereign immunity at the motion to dismiss stage when the officer's actions "could not be characterized as anything other than malicious, committed in bad faith, or wanton and willful." *Blue*, No. 10-23599-CIV, 2011 WL 2447699, at *2. Florida courts have explicitly recognized that "reckless conduct is the equivalent of willful and wanton conduct." *Williams v. City of Minneola*, 619 So. 2d 983, 986 (Fla. 5th DCA 1993). A person drives recklessly when he or she "drives any vehicle in willful or wanton disregard for the safety of persons or property." *State v. Desange*, 294 So. 3d 433, 437 (Fla. 2nd DCA 2020).

The Florida Supreme Court, in *City of Miami v. Horne,* held that in high-speed police pursuits the rule is that the officer should take such steps as may be necessary to apprehend the offender but, in doing so, not exceed proper and rational bounds nor act in a negligent, careless or wanton manner. 198 So. 2d 10, 13 (Fla. 1967); *Spencer v. City of W. Palm Beach,* No. 15-CV-80019, 2015 WL 4651089, at 6 (S.D. Fla. Aug. 5, 2015) (holding City immune from liability in high-speed police vehicular pursuit as § 768.28(9)(a) shields the "state or its subdivisions" from liability for the willful and wanton actions of its agents).

Plaintiffs TAC glaringly illustrates Officer Defendants, in their pursuit of Mr. Copeland, exceeded proper and rational bounds and engaged in reckless or willful and wanton conduct.

7

Wherefore, the City moves to dismiss Counts 1 and 23 with prejudice as it is sovereign immune from suit for the reasons stated herein.

### COUNTS 2 (MARCIA POCHETTE) AND 24 (JENICE WOODS)
### PLAINTIFFS' FWDA FAILURE TO RENDER AID COUNTS AGAINST THE CITY

#### a. FWDA Bars Duplicate and/or Subsumed Counts

Assuming a private cause of action even exists, Plaintiffs Failure to Render Aid counts are duplicative and/or subsumed into Plaintiffs' FWDA Counts, above. Plaintiffs attempt to bring a prohibited alternate theory under the FWDA.[5] TAC ¶¶ 120, 352. Plaintiffs plead Officer Defendants negligent failure to render or summon aid following the crash led to decedents suffering and was a cause of their deaths. TAC ¶¶ 31, 33, 120-4, 352, 354-8. The Florida Supreme Court has held an action for the personal injury effectively provides that no separate statutory action for personal injuries resulting in death can survive the decedent's demise. *Martin v. United Sec. Servs., Inc.,* 314 So.2d 765, 770 (Fla. 1975).

Under the *Martin* framework the FWDA was designed to prevent multiple actions and multiple claims for the same death causing conduct. *Id. See Sheffield v. R.J. Reynolds Tobacco Co.*, 329 So. 3d 114, 120 (Fla. 2021) (holding "[W]hen a personal injury to the decedent results in death, no action for the personal injury shall survive, and any such action pending at the time of death shall abate."). ("[A]ny personal injury claims alleging wrongdoing that ultimately resulted in the death of the decedent are extinguished upon death, leaving the statutory wrongful death claim as the only avenue for damages against the tortfeasor."). *Groover v. Polk Cnty. Bd. of Cnty. Commissioners*, 570 F. Supp. 3d 1134, 1153–54 (M.D. Fla. 2021). "[A]ternative theories of relief [are] subsumed in the wrongful death claim, and no claim, other than the statutory wrongful death

---

[5] Critically, § 316.062 expressly classifies a violation as a noncriminal traffic infraction, punishable as a nonmoving violation under chapter 318. Neither §§ 316.027 nor 316.062, Fla. Stat. contains language creating a private right of action, authorizing civil damages to establish civil liability. As mentioned, failure to render aid may be used to show negligence, which such personal injury cause of action abates upon death into the FWDA.

claim, [can] be brought or require[s] consideration by the district court." *Id.*; *See Banuchi v. City of Homestead*, No. 20-25133-Civ-Scola, 2021 WL 2333265, at *7 (S.D. Fla. June 8, 2021) (Scola, J.) (holding Florida's Wrongful Death Act precluded personal injury torts where defendant's actions resulted in decedent's death). Even assuming Plaintiffs have cognizable causes of action, the counts are pled as negligence causes of action contributing to the causes of deaths. As such, these counts are duplicate and/or subsumed in Plaintiffs' FWDA Counts and should be stricken or dismissed with prejudice.

### b. Officer Defendants Were Not in the Vehicle Crash with Plaintiffs

Notwithstanding the above, Florida courts have consistently interpreted "involved in a crash" to require that the vehicle actually collided with another vehicle, person, or object. *Rivera v. Randle E. Ambulance Serv., Inc.,* 393 So. 2d 605, 606 (Fla. 3rd DCA 1981); *Daugherty v. State*, 207 So.3d 980 (Fla. 5th DCA 2016) ([W]e hold that the operative phrase "any vehicle involved in a crash" means that a vehicle must collide with another vehicle, person, or object); *Rivera v. Randle E. Ambulance Serv., Inc.*, 393 So. 2d 605, 606 (Fla. 3rd DCA 1981) (holding the driver of any vehicle involved in an accident ... shall render to any person injured in the accident reasonable assistance …" (emphasis added); Fla. Stat. § 316.062(1)(2024). Plaintiffs do not plead the Officer Defendants were involved in this vehicle crash. It is undisputed they were not. Mr. Neoni Copeland fled from the Officer Defendants and crashed into decedents. TAC ¶¶ 25, 119, 345. As the statutory duty to render aid under Florida Statutes § 316.062 applies only to "the driver of any vehicle involved in a crash," Plaintiffs fail to state a cause of action and the counts are due to be dismissed.

### c. The Public Duty Doctrine Bars City Liability Absent a Special Relationship

Even if the Officer Defendants had some general duty to Plaintiffs, sovereign immunity and the public duty doctrine bars City liability absent a special relationship with Plaintiffs. Florida

law is clear that police officers owe a general duty to the public at large but no duty to particular individuals absent a special relationship. *Pollock v. Florida Dept. of Highway Patrol*, 882 So.2d 928 (Fla. 2004). Plaintiffs have not pled the existence of a special relationship. "[T]here can be no governmental liability unless a common law or statutory duty of care existed that would have been applicable to an individual under similar circumstances." *Henderson v. Bowden,* 737 So.2d 532, 534–35 (Fla. 1999) (citing Art. X, § 13, Fla. Const.; § 768.28 Fla. Stat. (1995); *Pollock*, 882 So. 2d 928, 932 (Fla. 2004). The responsibility to enforce the laws for the good of the public cannot engender a duty to act with care toward any one individual, unless an official assumes a special duty with regard to that person. *Pollock* at 935; *Everton v. Willard,* 468 So.2d 936, 938 (Fla. 1985); *Holodak v. Lockwood,* 726 So.2d 815, 816 (Fla. 4th DCA 1999) (stating that in government tort suits, plaintiffs must prove that defendant breached a common law or statutory duty "owed to the plaintiff individually and not a tort duty owed to the public generally"). The TAC does not allege the City seized the decedents and is devoid of a special duty owed to decedents individually. Where police officers have not arrived on the scene or assumed any degree of control over the situation, the "zone of risk" analysis has no application. *Henderson,* 737 So.2d at 536; *Pollock at* 935–6.

"Despite knowing Marcia May Pochette and Jenice Monique Woods sustained serious and/or life-threatening injuries, the Defendant Officers failed to stop, render aid, or summon emergency medical assistance, in contravention of departmental training and department policy." TAC ¶¶ 123, 355. As the Supreme Court of Florida held in *Pollock*, "… in the context of governmental tort litigation, written agency protocols, procedures, and manuals do not create an independent duty of care" to individual citizens. *Pollack* at 932, 936-7. A written policy or manual does not itself establish such a legal duty with individual members of the public. *Id*. As such, for reasons mentioned herein, the counts are due to be dismissed with prejudice.

10

**COUNTS 10 (MARCIA POCHETTE) AND 32 (JENICE WOODS) PLAINTIFFS'
FOURTEENTH AMENDMENT "PURPOSE TO CAUSE HARM" *MONELL* COUNTS**

> The issue in this case is whether a police officer violates the Fourteenth Amendment's guarantee of substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender. <u>We answer no and hold that in such circumstances only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation.</u> *Lewis* at 1711–12. (emphasis added).

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998); *Levy v. City of Hollywood*, 90 F. Supp. 2d 1344, 1346 (S.D. Fla. 2000).

Plaintiffs' *Monell* counts do not plausibly plead a "purpose to cause harm" Fourteenth Amendment constitutional violation to decedents. Generally, a high-speed vehicle pursuit by law enforcement does not sound the Constitution – and this case, while tragic, is not different from the plethora of cases cited herein. *County of Sacramento v. Lewis*, 523 U.S. 833, 854 (1998) (holding "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under 1983.").

Plaintiffs must not only allege facts that plausibly establish an underlying "purpose to cause harm" Fourteenth Amendment violation, but even more challenging, <u>a widespread pattern of similar violations in the past</u>. *See Gold v. City of Miami*, 151 F.3d 1346 (11th Cir. 1998). The TAC recites seemingly random prior vehicle pursuits, <u>none of which are pled as Fourteenth Amendment constitutional violations where the City intended to cause harm to third parties unrelated to the legitimate object of arrest</u>. TAC ¶¶ 56-63.

In fact, the three commonalities pled among Plaintiffs' eight cited prior vehicle pursuits by the City over 22 years are (1) no Fourteenth Amendment violations; (2) no purpose to cause harm; and (3) all pursuits were for the legitimate object of arrest. TAC ¶¶ 56-63. Specifically, Plaintiffs cite to prior vehicle pursuits after a (1) narcotics operation; (2) traffic infraction; (3) knifepoint

carjacking forcible felony; (4) failure to yield for a traffic stop; (5 and 6) stolen vehicle (twice); (7) forcible felony where driver struck WPBPD officers; and (8) failure to yield for a traffic infraction. TAC at "Pursuits" Chart at p. 20-21. Every cited pursuit in the TAC was engaged for legitimate law enforcement purpose and object of arrest – and Plaintiffs do not plead otherwise.

It logically follows since there are no pled prior Fourteenth Amendment constitutional violations with a purpose to cause harm unrelated to the legitimate object of arrest, the final policy maker, the City Commission and Mayor,[6] cannot ratify a nonexistent unconstitutional practice, nor can there be notice or deliberate indifference by the City to train or supervise in an area in which there are no prior Fourteenth Amendment constitutional violations required by *Monell*. The TAC's lack of factual allegations is not sufficient "to raise a right to relief above the speculative level." *McCants v. City of Mobile*, 752 F. App'x 744, 748 (11th Cir. 2018); *Twombly* at 555–56. *See Sanders v. City of Union Springs*, 207 F. App'x 960, 965 (11th Cir. 2006) (holding plaintiffs failed to prove that Officer Johnson acted with an intent to cause harm to Kendrick unrelated to the legitimate pursuit of a fleeing suspect; therefore, we conclude that the plaintiffs' substantive due process claim fails.).

Plaintiffs' assertions that the Officer Defendants had a "purpose to cause harm" is at best a conclusory and vague allegation with no additional facts pled.[7] Plaintiffs have not, and cannot, plead any ultimate facts that the Officer Defendants intended to harm the decedents through a pursuit with Mr. Neoni Copeland - because they do not exist.

---

[6] Discussed below, as a matter of law, the final policymaker for the City is not the Chief of Police. Rather, it is the City Commission and Mayor. City of West Palm Beach Charter, §§ 1.01, 1.03 2.03, 3.01, https://library.municode.com/fl/west_palm_beach/codes/code_of_ordinances?nodeId=PTICHRELA_SPACH.

[7] Plaintiffs only plead a conclusory "purpose to cause harm" in this instant case in the individual counts against the Officer Defendants. Plaintiffs never plead, in any of the counts, any facts the Officer Defendants "purpose to cause harm" was to harm the decedents.

### a.   *Monell* **Fourteenth Amendment "Purpose to Cause Harm" Liability Does Not Exist**

"Ordinarily, a governmental entity cannot be held liable for the unconstitutional actions of its employees under 42 U.S.C. § 1983." *Simmons v. Bradshaw*, 879 F.3d 1157, 1173 (11th Cir. 2018). In *Monell v. Dep't of Soc. Servs. of City of New York*, however, the Supreme Court cemented that a municipality can be liable for constitutional violations under § 1983 when "execution of a government[al] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury." 436 U.S. 658, 694 (1978). Stated simply, a plaintiff must demonstrate "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Simmons*, 879 F.3d at 1173. "In order for a plaintiff to demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004).

"Deliberate indifference," which also forms part of the second requirement, "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of [their] action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). No doubt, "the bar to establish municipal liability is very high." *Simmons*, 879 F.3d at 1169. In sum, proving municipality liability for constitutional violations is no easy feat because it demands a plaintiff to show a "municipality's own wrongful conduct caused [their] injury, not [just] that the municipality is ultimately responsible for the torts of its employees." *Connick*, 563 U.S. at 70 n.12. Plaintiffs do not rely on an officially promulgated "unconstitutional" policy. Thus, Plaintiffs must rely on an unofficial practice or custom. *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). As such, to state a federal claim against the City, Plaintiffs must identify an unofficial practice or custom. This they cannot do and have not done.

13

**b.  <u>TAC Fails to Plead Prior Similar Occurrences – or Even a Single Prior "Purpose to Cause Harm" Fourteenth Amendment Pursuit Violation</u>**

It is well-settled that a plaintiff must identify "substantially similar" incidents to the case at hand in order to show the existence of a practice or custom that caused his injuries. *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005) (explaining the cited incidents must be "substantially similar to the case at hand" for purposes of showing a widespread practice"). Since the TAC does not cite even a <u>single</u>, prior "purpose to cause harm" Fourteenth Amendment vehicle pursuit violation by the City in its 157 pages, the TAC cannot, and does not, as a matter of law, assert the City was on notice of similar, prior "purpose to cause harm" Fourteenth Amendment constitutional violations that were the moving force behind the tragic crash in this case. TAC ¶¶ 56-63. As briefed above, the "Historical/Prior Incidents" section of the TAC cited eight (8) prior vehicle pursuits by the City over 22 years, none of which allege (1) a Fourteenth Amendment violation; (2) a "purpose to cause harm"; and (3) any pursuit not for the purpose of legitimate object of arrest. TAC ¶¶ 56-63. The Plaintiff does not plead substantially similar prior incidents of a "purpose to cause harm" Fourteenth Amendment violation which would put the City on notice for *Monell* purposes because they do not exist and the vehicle pursuits pled are not substantially similar to the instant matter. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005) (explaining the cited incidents must be "substantially similar to the case at hand" for purposes of showing a widespread practice); *Gaviria v. Guerra*, No. 17-23490-CIV, 2018 WL 1876124, at *6 (S.D. Fla. 2018) (plaintiff failed to state a *Monell* claim where he set forth "vague allegations" regarding "history of reports of excessive use of force incidents" by two police officers); *Brooks v. Scheib*, 813 F.2d 1191, 1192–93 (11th Cir. 1987) (holding 10 citizens' complaints about one officer fails to provide a municipality with notice that the "past complaints of police misconduct had any merit"); *Gonzalez v. City of Miami*, 2023 WL 2030635, at *3 (S.D. Fla. Feb. 15, 2023)

14

(dismissing *Monell* claim with prejudice where 27 incidents of misconduct could not have put the City on notice as a matter of law because they were not substantially similar to the case at hand for *Monell* liability on a motion to dismiss).

Instead, the Plaintiffs simply regurgitate holdings from *Monell* and this Court need not accept legal conclusions couched as a factual allegations as true. *Phillips v. Macon Bibb Cnty. Gov't,* 2022 WL 18005668, at \*1 (11th Cir. 2022) (affirming dismissal for plaintiff's attempts to proceed on a complaint that advanced "legal conclusions couched as factual allegations"); *Williams v. City of Miami*, 2021 WL 4990005, at \*4 (S.D. Fla. Oct. 27, 2021) ("[T]here are not enough facts alleged to permit an inference that each of the 24 instances involved misconduct, as opposed to lawful (but perhaps unpleasant) activity."); *See Brooks*, 813 F.2d at 1192–93 (no notice of past police misconduct because the plaintiff "never demonstrated that past complaints of police misconduct had any merit."). The Plaintiffs' lack of <u>even a single</u> prior "purpose to cause harm" Fourteenth Amendment violation and mere conclusory allegations subject the TAC to dismissal with prejudice because it fails to cross the line of plausibility due to the lack of factual content pertinent to the claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Dismissal with prejudice is, therefore, due.

   c.  <u>**No Widespread Pattern or Practice of Vehicular Pursuit "Purpose to Cause Harm" Fourteenth Amendment Violations**</u>

It follows since Plaintiffs failed to plead any prior "purpose to cause harm" Fourteenth Amendment vehicle pursuit constitutional deprivations, there can be no widespread pattern or practice for Plaintiffs' counts to survive dismissal. Plaintiffs purported *Monell* counts fail to plead alleged prior similar incidents (eight (8) dissimilar police pursuits over 22 years) which equate to a custom that is so "persistent and widespread" and "so settled and permanent that it takes on the force of law." *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004); *Brooks*, 813 F.2d at 1191

15

(ten citizen complaints insufficient where complaints not shown to have merit); *Rincon,* 2020 WL 7344633, at \*10 (dismissing *Monell* claim finding eight incidents in six years insufficient); *Whitaker*, 126 F. Supp. 3d at 1321 (four shootings incidents in nine month span insufficient to establish a pattern); *Ludaway v. City of Jacksonville*, Fla., 245 F. App'x 949, 952 (11th Cir. 2007) (170 complaints of excessive force in 2 years insufficient to show a custom of excessive force where only 10 complaints were sustained); *Williams*, 2021 WL 4990005, at \*4 (dismissing *Monell* claim alleging twenty-four instances of alleged police misconduct over 15 years).

Plaintiffs fail to identify prior "purpose to cause harm" Fourteenth Amendment vehicle pursuits which were *deemed* unconstitutional to establish a *widespread* custom or policy with the *force of law*. *See Depew* 787 F.2d at 1499; *Brown v. City of Fort Lauderdale*, 923 F.2d 1480, 1481 (11th Cir. 1991).

### d. <u>No Deliberate Indifference</u>

It follows that the City cannot be deliberately indifferent to something that never occurred prior – specifically, "purpose to cause harm" Fourteenth Amendment vehicle pursuit constitutional violations. The Plaintiffs further failed to show deliberate indifference by the City Commission or the Mayor. As discussed below, through the City Charter and Code, the City Commission and the Mayor are the final policy makers, not the Chief of Police. Plaintiffs' TAC fails to allege that the City Commission or the Mayor had an "unconstitutional motive" or ratified both "the decision itself" *and* "the unconstitutional basis for it" to state a claim.[8] *Smith v. City of Fort Pierce*, 2018 WL 5787269, at \*5 (S.D. Fla. 2018) ("The final policymaker must ratify not only the decision itself, but also the unconstitutional basis for it."); *Gaviria v. Guerra*, 2018 WL 1876124, at \*6

---

[8] On the contrary, after the subject incident the Officer Defendants were terminated. TAC ¶ 108.

(S.D. Fla. 2018) (plaintiff failed to state a *Monell* claim where he set forth "vague allegations" regarding "history of reports of excessive use of force incidents" by two police officers).

    **e.** ***Monell* Ratification Theory Fails as a Matter of Law**

        i.  Final Policy Maker and Judicial Notice of the City's Municipal Laws

Notwithstanding there are no pled "purpose to cause harm" Fourteenth Amendment vehicle pursuit constitutional violations to ratify, as a matter of law, the final policymaker for the City is the City Commission and Mayor, not the Chief of Police.[9] The above-noted municipal laws and documents are capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned. In addition, the City has furnished copies of the municipal documents at issue attached as composite exhibit D. Thus, the Court may take judicial notice of the City Municipal Code, Sections 1.01, 1.03, 2.03, and 3.01. *See Walburn v. City of Naples, Fla.*, 2005 WL 2322002, at \*16 (M.D. Fla. 2005) (court may take judicial notice of City ordinances).

Judicial notice is a means by which adjudicative facts not seriously open to dispute are established as true without the normal requirement of proof by evidence. *Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197, 1204 (11th Cir. 2004); Fed.R.Evid. 201(a), (b), (d), and (f). City Ordinances that are central to a case are judicially noticeable. *Vazzo v. City of Tampa*, 2018 WL 4610998, at \*2 (M.D. Fla. Mar. 15, 2018); Fed. R. Evid. 201(b). *See United States v. City of Miami, Fla.,* 664 F.2d 435, 446, FN 16 (5th Cir. 1981) (taking judicial notice of the Miami Civil Service Ordinance). *See also 10th St. Partners, LLC v. Cnty. Comm'n ex rel. Sarasota Cnty., Fla.,* No. 8:11-CV-2362-T-33TGW, 2012 WL 4328655, at \*3 (M.D. Fla. Sept. 20, 2012) (taking judicial notice of the Sarasota County Code of Ordinances). The City requests this Court to take

---

[9] City of West Palm Beach Charter and Code, §§ 1.01, 1.03, 2.03, and 3.01. https://library.municode.com/fl/west_palm_beach/codes/code_of_ordinances?nodeId=PTICHRELA_SPACH. Attached as Composite Exhibit D is the City Charter and Code in effect on July 30, 2024.

judicial notice of its City Charter and Code §§ 1.01, 1.03 2.03, 3.01 which hold, as a matter of law, the City Commission and Mayor are the City's final policymakers.

    ii.   The City Commission and Mayor Are the Final Policy Makers

Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Whether an official had final policymaking authority is a question of state law. *Id*. at 483. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (holding only those municipal officials who have "final policymaking authority" may by their actions subject the government to § 1983 liability). Even though no prior Fourteenth Amendment violations are pled, Plaintiffs allege a *Monell* ratification theory, incorrectly, by the Chief of Police who is not the City's final policymaker.[10] TAC ¶¶ 74, 76, 105, 242, 251, 474, 483. Under a ratification theory, a municipality can face liability when a "subordinate public official makes an unconstitutional decision," which is then "adopted by someone who does have final policy making authority," for an unconstitutional reason. *Matthews v. Columbia Cty.,*294 F.3d 1294, 1297 (11th Cir. 2002). When the final policymaker is a governing body, there must be a majority vote of the governing body, along with an unconstitutional reason. *Id*.

Plaintiffs fail to plead the City Commission and the Mayor ever voted on a "purpose to cause harm" Fourteenth Amendment vehicular pursuit constitutional violation policy – a requirement as final policymakers. *Lontoc v. Sch. Bd. of Palm Beach Cty.,* No. 24-12386, 2025 WL 3000545, at *12 (11th Cir. Oct. 27, 2025). As such, there can be no ratification of an unconstitutional policy by the City Commission and the Mayor.[11] *Lontoc*, at *11-12 (quoting

---

[10] See *Scala v. City of Winter Park*, 116 F.3d 1396 (11th Cir. 1997), *Quinn v. Monroe County*, 330 F.3d 1320 (11th Cir. 2003) (holding if a superior retains meaningful review authority, the subordinate is not the final policymaker).
[11] On the contrary, after this incident, the GHOST unit was dissolved and the Mayor acted by terminating Chief of Police Frank Adderly and the Officer Defendants after this subject incident. TAC ¶¶ 74-5, 108, 240, 472.

18

*McCarthy v. City of Cordele, Ga.,* 111 F.4th 1141, 1146 (11th Cir. 2004)) (holding "final policymaker for a challenged employment decision was a multimember body, the plaintiff must allege that 'a majority' of the members voted in favor of the decision 'for an unconstitutional reason."). Accordingly, the City moves this Court to dismiss Counts 10 and 32 with prejudice.[12]

### COUNTS 18 (MARCIA POCHETTE) AND 40 (JENICE WOODS) PLAINTIFFS' § 1983 *MONELL* FAILURE TO TRAIN COUNTS AGAINST THE CITY

   a. **Plaintiffs Fail to Plead a Prior "Purpose to Cause Harm" Fourteenth Amendment Constitutional Violation by Untrained Employees.**

Plaintiffs' TAC is absent of ultimate facts that would put the City on notice that it failed to train Officer Defendants on "purpose to cause harm" Fourteenth Amendment constitutional violations. Plaintiffs do not plead the Officer Defendants had a "purpose to cause harm" to the decedents. Plaintiffs' TAC is devoid of even a <u>single</u> prior case where (1) a vehicle pursuit Fourteenth Amendment "purpose to cause harm" constitutional violation occurred and (2) the City acted with deliberate indifference to any of its officers' Fourteenth Amendment unconstitutional conduct. The Plaintiffs have not pled, nor is there any evidence to support an assertion that the City of West Palm Beach's policies are unconstitutional.

The Supreme Court has stated that there are only "limited circumstances" in which an allegation of a failure to train or supervise can be the basis for liability under Section 1983. *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). These "limited circumstances" occur only where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy results in the employees

---

[12] Plaintiffs request for damages for "decedent's conscious pain and suffering until death" must be stricken. TAC ¶¶ 253, 485. Section 1983 is silent on whether civil rights claims survive the death of the injured party so state law fills the gap. *Robertson v. Wegmann*, 436 U.S. 584, 588 (1978). The FWDA eliminates claims for pain and suffering of the decedent from the time of injury to the time of death; however, the decedent's close surviving relatives are allowed recovery for their personal pain and suffering. *Fla. Clarklift, Inc. v. Reutimann*, 323 So. 2d 640, 641 (Fla. 2nd DCA 1975); *Martin v. United Security Services, Inc.*, 314 So.2d 765 (Fla. 1975).

violating a citizen's constitutional rights. Plaintiffs do not plead the Officer Defendants ever had a "purpose to cause harm" to the decedents, and as such, as tragic as it is, there is no Fourteenth Amendment constitutional rights violation and *Monell* liability cannot exist. See *Sanders*, 207 F. App'x 960, 966 (11th Cir. 2006) (holding because plaintiffs are unable to establish a constitutional violation, they are unable to maintain a § 1983 action for failure to train or supervise the City's officers in high-speed pursuits.).

Additionally, it is only when the failure to train amounts to "deliberate indifference" that it can properly be characterized as a "policy" or "custom" necessary for Section 1983 liability to attach. *Canton*, 489 U.S. at 389, 109 S.Ct. 1197. "Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan Cty. v. Brown,* 520 U.S. 397, 410 (1997); *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A pattern of similar constitutional violations by untrained employees to the rights of persons whom the untrained employees come into contact is ordinarily necessary to demonstrate deliberate indifference, as required for municipal liability under § 1983 for failure to train. *Whitaker v. Miami-Dade County*, 126 F.Supp.3d 1313 (S.D. Fla. 2015); *Connick*, 563 U.S. 51, 61 (2011); *Edwards v. Grubbs*, 179 F.4th 909, 929 (11th Cir. 2026) (same).

Plaintiffs do not plead a <u>single</u> prior "purpose to cause harm" Fourteenth Amendment violation, let alone prior similar constitutional violations by untrained employees to survive a motion to dismiss. To establish a "deliberate or conscious choice" or such "deliberate indifference, a plaintiff must present evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Board of Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 407–09, (1997).

If Plaintiffs intend to rely on a custom of harm-intending pursuits growing from the City's alleged "failure to investigate or discipline" its officers, then Plaintiff must plead sufficient facts showing that such an unwritten custom exists. *Spencer v. City of W. Palm Beach*, No. 15-CV-80019, 2015 WL 4651089, at *4 (S.D. Fla. Aug. 5, 2015). Even "proof of a <u>single</u> incident of unconstitutional activity is not sufficient to impose liability against a municipality." *Craig v. Floyd Cnty., Ga.,* 643 F.3d 1306, 1310 (11th Cir. 2001) (emphasis added). Rather, "considerably more proof than the <u>single</u> incident [is] necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *Tuttle,* 471 U.S. at 824; *accord Schmelz,* 954 F.2d at 1544 (emphasis added).

The TAC does not allege that the City's failure to train amounted to deliberate indifference to the constitutional rights of third parties. Plaintiffs failed to plead when the City of West Palm Beach, before the subject lawsuit, inadequately trained its employees regarding "purpose to cause harm" Fourteenth Amendment violations in vehicle pursuits with injury to third parties. Plaintiffs further fail to plead which inadequate training from nonexistent prior incidents violated a citizen's Fourteenth Amendment constitutional right with deliberate indifference. The Plaintiffs further failed to plead a factual predicate which illustrates the City knew of this need to train and made a deliberate choice not to take any action. *See Spencer*, 2015 WL 4651089, at *5 (S.D. Fla. Aug. 5, 2015) (holding Plaintiff failed to sufficiently allege the City of West Palm Beach existence of a municipal policy or custom of engaging in harm-intending high-speed pursuits).

### b. The "Obvious Conduct" Doctrine

Plaintiffs in a conclusory and vague fashion plead the City needed to train its officers on the "constitutional limits of vehicle pursuits." TAC ¶¶ 301, 533. Assuming *arguendo*, the Plaintiffs did plead the Officer Defendants had a "purpose to cause harm" to decedents, which Plaintiffs do

not plead, such conduct would be egregious, unlawful, and obviously prohibited. Agencies need not train officers to refrain officers from patently illegal acts. *Doe ex rel. Doe v. City of Demopolis*, 461 F. App'x 915, 917 (11th Cir. 2012); *Sewell*, 117 F.3d 488, 490 (11th Cir. 1997) (holding no reasonable training was necessary to inform a police officer that sexual assault or molestation is inappropriate, the municipality could not be held liable).[13]

As such, the City moves to dismiss counts 18 and 40, with prejudice.

## COUNTS 19 (MARCIA POCHETTE) AND 41 (JENICE WOODS) PLAINTIFFS' § 1983 *MONELL* FAILURE TO SUPERVISE COUNTS AGAINST THE CITY

Plaintiffs' TAC is absent of ultimate facts that would put the City on notice that it failed to supervise Officer Defendants. Plaintiff does not plead a <u>single</u> ultimate fact, incident, or case where a prior (1) "purpose to harm" Fourteenth Amendment constitutional violation occurred and (2) if one had occurred, the City acted with deliberate indifference to its officers' conduct. The Plaintiff has not pled, nor is there any evidence to support an assertion that the City of West Palm Beach's policies are unconstitutional.

The Supreme Court has stated that there are only "limited circumstances" in which an allegation of a failure to train or supervise can be the basis for liability under Section 1983. *City of Canton v. Harris*, 489 U.S. 378, (1989). These "limited circumstances" occur only where the municipality inadequately supervises its employees, this failure to supervise is a city policy, and that city policy results in the employees violating a citizen's constitutional rights. *Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998); *See N.R. by Ragan v. Sch. Bd. of Okaloosa Cnty., Fla.*, 418 F. Supp. 3d 957, 991 (N.D. Fla. 2019). It is only when the failure to supervise amounts

---

[13] Plaintiffs request for damages for "decedent's conscious pain and suffering until death" must be stricken. See FN 10, above. TAC ¶¶ 303, 535.

to "deliberate indifference" that it can properly be characterized as a "policy" or "custom" necessary for Section 1983 liability to attach. *Canton*, 489 U.S. at 389, 109 S.Ct. 1197.

A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference, as required for municipal liability under § 1983 for failure to supervise. *Whitaker v. Miami-Dade County*, 126 F.Supp.3d 1313 (S.D. Fla. 2015). Plaintiffs do not plead a <u>single</u> prior case, let alone prior similar constitutional violations by unsupervised employees to survive a motion to dismiss. To establish a "deliberate or conscious choice" or such "deliberate indifference, a plaintiff must present evidence that the municipality knew of a need to supervise in a particular area and the municipality made a deliberate choice not to take any action." *Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 407–09 (1997). In order to pursue a claim that the City's "fail[ure] to discipline" its officers led to a custom encouraging high-speed pursuits in which the aim was solely to harm fleeing suspects, Plaintiff must pled that such harm-intending pursuits occurred "considerably more" often than once. *Spencer v. City of W. Palm Beach*, 2015 WL 4651089, at *4 (S.D. Fla. Aug. 5, 2015).

Plaintiffs failed to plead when the City of West Palm Beach, before the subject lawsuit, inadequately supervised its employees regarding fleeing suspects with possible injury to the Fourteenth Amendment constitutional rights to third parties. Plaintiffs further fail to plead which inadequate supervising from prior incidents violated a citizen's constitutional rights with deliberate indifference. The Plaintiffs further fail to plead the facts needed that the City knew of a need to supervise in Fourteenth Amendment violations and the City made a deliberate choice not to supervise. As such, for the reasons stated herein, the City respectfully request this Court dismiss the § 1983 failure to supervise counts, counts 19 and 41, with prejudice.

**COUNTS 20 (MARCIA POCHETTE) AND 42 (JENICE WOODS)**
**STATE LAW NEGLIGENT RETENTION COUNTS AGAINST THE CITY**

a. **Shotgun Pleading**

Plaintiffs allege Officer Defendants acted *within* the course and scope of their employment. TAC ¶¶ 8, 13, 29, 315, 547. Plaintiffs also plead the Officer Defendants acted *outside* the course and scope of their employment, or in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights … TAC ¶¶ 316, 548. Plaintiffs' counts are indiscernible shotgun pleadings, and should be dismissed, with prejudice. *See Wieland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320-6 (11th Cir. 2015).

b. **Whether Inside or Outside Course and Scope of Employment the Counts Fail**

The central problem is a statutory paradox for Plaintiffs because, as pled, claims for negligent retention require that the officer's tortious acts occur *outside* the course and scope of employment, while § 768.28(9)(a), Florida Statutes expressly shields the City from liability for acts committed outside course and scope, as well as bad faith, malicious purpose, or willful and wanton conduct.

c. **Plaintiffs Plead Officer Defendants' Conduct Within Course and Scope of Employment**

Plaintiffs repeatedly plead Officer Defendants acted within the course and scope of their employment during this subject incident. TAC ¶¶ 8, 13, 29, 315, 547. However, as with negligent retention, "it is clear that the alleged acts by employees giving rise to liability for negligent retention or supervision *must occur outside the employees' scope of employment*." *Santillana v. Fla. State Court System*, 2010 WL 271433, at *11 (M.D. Fla. Jan. 15, 2010) (citing *Watson*, 552 So.2d at 1148; *Garcia*, 492 So.2d at 438) (emphasis added).

"The City is absolutely correct that because a negligent supervision and retention claim involves the direct negligence of the City, *it requires that the actions of the employee be outside*

*the course and scope of the employee's employment.*" *City of Boynton Beach v. Weiss*, 120 So.3d 606, 610-11 (Fla. 4th DCA 2013) (emphasis added) (holding officer acted within the course and scope of his employment at all times and the negligent retention/supervision claim must fail.); *See Watson v. City of Hialeah*, 552 So.2d 1146, 1148 (Fla. 3rd DCA 1989) (holding an action for negligent retention involves acts which are *not* within the course and scope of employment.); *See also Belizaire v. City of Miami,* 944 F.Supp.2d 1204, 1214-5 (S.D. Fla. 2013) (discussing *Garcia v. Duffy,* 492 So.2d 435, 438 (Fla. 2nd DCA 1986)) (holding "Florida law requires that a claim for negligent retention allege acts committed outside the course and scope of employment."). As such, because it is repeatedly pled that the acts giving rise to liability occurred within the Officer Defendants' course and scope of employment, Counts 20 and 42 fail as a matter of law.

   d. **Sovereign Immunity Shields the City from Outside Course and Scope Conduct and Discretionary Functions.**

To the extent Plaintiffs shotgun plead that Officer Defendants conduct was outside the course and scope of employment, in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, the City is sovereign immune. TAC ¶¶ 316, 548.

Florida Statute 768.28(9)(a)(2024), states, in pertinent part:

The state or its subdivisions are not liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

As such, the City is sovereign immune to allegations that the Officer Defendants acted outside their course and scope of employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Additionally, Federal and state courts routinely dispose of negligent retention claims against municipalities finding they are immune from suit from such claims because "a governmental agency is immune from tort liability based on action that involve its 'discretionary' functions, such as 'policy making, planning or judgmental governmental functions.'" *Jackson v. Montesino*, 2009 WL 1515511, at *9 (S.D. Fla. June 1, 2009). "[T]he decision of a municipality to hire, fire or retain a police officer involves exercise of governmental discretion at the highest level, and is 'precisely the area into which, under the separation of powers doctrine, courts must not intervene.'" *Jackson*, 2009 WL 1515511, at *9 (citing *Storm v. Town of Ponce Inlet.*, 866 So. 2d 713 (Fla. 5th DCA 2004)). Since Plaintiff's negligent retention claims against the City are based on the City's *decision* to retain the Officer Defendants, Plaintiffs' claims again fail as a matter of law because they are barred by sovereign immunity.

A plaintiff must allege facts sufficient to show that once an employer received actual/constructive notice of problems with an employee's fitness, it was unreasonable for the employer not to investigate/take corrective action. *Garcia v. Duffy*, 492 So.2d 435, 441 (Fla. 2nd DCA 1986). The employer's failure to investigate/take corrective action must be the proximate cause of the plaintiff's harm, and there must be a connection and foreseeability between the employee's employment history and the current tort committed by the employee. *Dep't. of Envtl. Prot.*, *supra* at 660-61. Absent are specific allegations the City received notice of similar "purpose to cause harm" Fourteenth Amendment violations and the City failed to take corrective action. On the contrary, the Officer Defendants received discipline by the City before this crash and were terminated after.[14] TAC ¶¶ 91-4, 108.

As such, these counts should be dismissed with prejudice.

---

[14] Plaintiffs concede and plead the Officer Defendants were disciplined prior to this subject incident. Plaintiffs attack the discretionary function of *how* the City disciplined its officers.

## COUNTS 21 (MARCIA POCHETTE) AND 43 (JENICE WOODS)
## STATE LAW NEGLIGENT TRAINING COUNTS AGAINST THE CITY

### a. Shotgun Pleading

To exercise brevity, the City reincorporates its Shotgun pleading argument at page 25.

### b. Whether Inside or Outside Course and Scope of Employment the Counts Fail

Claims for negligent training require that the officer's tortious acts occurred *outside* the course and scope of employment and § 768.28(9)(a), Florida Statutes, expressly shields the City from liability for acts committed outside course and scope, as well as bad faith, malicious purpose, or willful and wanton conduct. See Motion to Dismiss at Counts 20 and 42, at *25-8, ¶¶ c and d, above. The Court's analysis need not go any further for dismissal.

### c. Plaintiffs Plead Officer Defendants' Conduct Within Scope of Employment

In this case the TAC clearly alleges the Officer Defendants' actions in the vehicle pursuit were done within the course and scope of their employment. TAC ¶¶ 8, 13, 29, 324, 556. Under Florida law negligent training only occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment. *Whitaker v. Miami-Dade County*, 126 F.Supp.3d 1313 (S.D. Fla. 2015).

Additionally, the acts must be *outside the course and scope of the employee's employment* for the employer to be separately liable for damages for negligent supervision or negligent training. *Gabor v. Remington Lodging & Hosp., LLC*, 413 So. 3d 261, 265 (Fla. 5th DCA 2025) (emphasis added). Because it is alleged that the acts giving rise to liability occurred within the officers' scope of employment, while they were working the evening shift, Counts 21 and 43, as a matter of law, fail to state a claim for negligent training and should be dismissed with prejudice.

27

### d. Outside Scope of Employment - Sovereign Immunity Bars the Counts

Assuming, *arguendo*, even if the officers were acting outside the scope of their employment, under Florida law, the City is sovereign immune from these counts under 7628.28(9)(a), Florida Statutes, and the City cannot be liable for failure to train and supervise because training and supervision are "discretionary functions" for which governmental liability does not attach. *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1264–66 (11th Cir.2 001); *See Cook v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1117–19 (11th Cir. 2005); *Gelbard v. City of Miami*, 845 F.Supp.2d 1338, 1340–41 (S.D. Fla. 2012).

The term "discretionary" as used in this context means that the governmental act in question involved an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning. *Kaisner v. Kolb*, 543 So. 2d 732, 737 (Fla. 1989). "Conceptually, the question of the applicability of ... immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity." *Kaisner*, 543 So. 2d 732, 734 (Fla. 1989). A court must find no liability as a matter of law if *either* (a) no duty of care existed, *or* (b) the doctrine of governmental immunity bars the claim. *Kaisner,* 543 So. 2d 732, 734 (Fla. 1989). As in this subject case, if there was no custody or detention by the police officers, there is no duty of care. *Id*. As such, due to the reasons stated herein, Counts 21 and 43, as a matter of law, fail to state a claim for negligent training.

### e. Sovereign Immunity - Discretionary Training Decisions

Under Florida law, the City has sovereign immunity from negligent training claims because decisions regarding how to train police officers and what subject matter to include in training are considered discretionary governmental functions involving fundamental questions of policy and

planning. In *Lewis v. City of St. Petersburg*, holding that when a plaintiff challenges the reasonableness of a city's policy decisions regarding police training content, the discretionary function exception to Florida's waiver of sovereign immunity bars the claim. 260 F.3d 1260, 1266 (11th Cir. 2001). Florida courts consistently apply this immunity to bar negligent training and supervision claims against municipalities.

In *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County*, the Eleventh Circuit explained that allowing tort liability for training decisions would constitute improper judicial intervention into the fundamental decision-making of the legislative and executive branches. 402 F.3d 1092, 1117-18 (11th Cir. 2005). A city's decision regarding how to train officers and what subject matter to include is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning. *Id.* at 1118. As such, since the TAC alleges that the actions of the Officer Defendants were inside the course and scope of their employment, as well as the City's assertion of sovereign immunity to its training of police officers, Counts 21 and 43 should be dismissed with prejudice.

**COUNTS 22 (MARCIA POCHETTE) and 44 (JENICE WOODS)**
**STATE LAW NEGLIGENT SUPERVISION COUNTS AGAINST THE CITY**

a.  **Shotgun Pleading**

To exercise brevity, the City reincorporates its Shotgun pleading argument at page 25.

b.  **Whether Inside or Outside Course and Scope of Employment the Counts Fail**

Claims for negligent supervision require that the officer's tortious acts occurred *outside* the course and scope of employment and § 768.28(9)(a), Florida Statutes, expressly shields the City from liability for acts committed outside course and scope, as well as bad faith, malicious purpose, or willful and wanton conduct. See Motion to Dismiss at Counts 20 and 42, at *25-8, ¶¶ c and d, above. The Court's analysis need not go any further for dismissal.

29

"Negligent supervision occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment." *Whitaker v. Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1330 (S.D. Fla. 2015); See *Acts Retirement-Life Communities Inc. v. Estate of Zimmer*, 206 So.3d 112, 114 (Fla. 4th DCA 2016) citing *Dep't. of Envtl. Prot. v. Hardy*, 907 So.2d 655, 660 (Fla. 5th DCA 2005) (same). However, as with negligent retention, "it is clear that the alleged acts by employees giving rise to liability for negligent supervision *must occur outside the employees' scope of employment*." *Santillana v. Fla. State Court System,* No. 6:09–cv–2095–Orl–19KRS, 2010 WL 271433, at *11 (M.D. Fla. Jan. 15, 2010) (citing *Watson v. City of Hialeah,* 552 So.2d at 1148; *Garcia,* 492 So.2d at 438) (emphasis added); *Whitaker,* at 1330.

In this case, the TAC clearly alleges the Officer Defendants' actions in the vehicle pursuit were done within the course and scope of their employment. TAC ¶¶ 8, 13, 29, 333, 565, and at "realleges clause" at * 154. Thus, for this reason alone Counts 22 and 44 fail as a matter of law. Even then, Plaintiffs' Negligent Supervision claims are premised upon the City's alleged omissions in *how* it supervised its police officers. TAC ¶¶ 337-8, 568-9. This claim is predicated on the City's general supervisory policies - precisely the kind of discretionary action protected by sovereign immunity. *Cook*, 402 F.3d 1092, 1118 (11th Cir. 2005); *Casado v. Miami-Dade Cnty.*, 340 F. Supp. 3d 1320, 1331 (S.D. Fla. 2018) ("The County enjoys sovereign immunity for its decisions regarding implementation of training and supervisory policies.").

The Eleventh Circuit and this District have dismissed such claims because "[a] city's decision regarding how to supervises its officers and what subject matter to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and

30

planning." *Whitaker*, 126 F. Supp. 3d at 1331 (quoting *Lewis v. City of St. Petersburg*, 260 F. 3d 1260, 1265 (11th Cir. 2001)); *Lordeus v. Miami-Dade Cnty.*, 263 F. Supp. 3d 1307, 1312 (S.D. Fla. 2017)("[E]ven if Plaintiff were granted leave to amend his claim, such an amendment would be futile in light of the County's argument regarding sovereign immunity. Count IV against the County is therefore dismissed with prejudice."); *Cook,* 402 F.3d 1092, 1118 (11th Cir. 2005) (citing *Lewis*, 260 F.3d at 1266) (holding a claim of negligent supervision cannot be based on a governmental entity's general supervisory practices because these are "discretionary' governmental functions immune from tort liability.").

As mentioned above, the TAC lacks factual allegations as to how it failed to supervise its police officers, fails to explain the basis of why or how the City could be on notice of its alleged deficient supervision of its officers, and legal conclusions couched as factual allegations are not entitled to truth at the pleading stage. *See Womack v. Carroll Cnty., Ga.*, 840 F. App'x 404, 405 (11th Cir. 2020) ("[W]e need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations.").

Accordingly, because, at a minimum, the basis of Plaintiffs' claims regarding *how* it supervises its officers is a discretionary governmental function, Plaintiffs' claims for Negligent Supervision fail because they are barred by sovereign immunity and should be dismissed with prejudice.

**CONCLUSION**

Wherefore, for the reasons stated herein, Defendant, City of West Palm Beach, respectfully requests this Court grant its motion in its entirety, dismiss Plaintiffs' Third Amended Complaint with prejudice, and any other relief this Court deems necessary and proper.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of August, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service Lists in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ANDREW B. CARRABIS*
Andrew Brett Carrabis
Fla. Bar No. 89782

## CM/ECF SERVICE LIST

**Attorneys for Plaintiffs:**

Jerome Alexander Stone, Jr.
Stone & Capobianco PL
219 East Ocean Blvd
Stuart, FL 34994
772-781-4357
Fax: 772-781-4340
Email: jas@stonelawfl.com

Linda Elise Capobianco
Stone & Capobianco PL
219 East Ocean Blvd
Stuart, FL 34994
772-781-4357
Fax: 781-4340
Email: lec@stonelawfl.com

Kevin Ramon Anderson
Kevin R. Anderson
500 South Australian Avenue
Sixth Floor
West Palm Beach, FL 33401
561-832-3386
Fax: (561) 820-4867
Email: andewelch@andersonandwelch.com

Scott Bryant Smith
Smith & Ball Injury Law
4440 PGA Blvd.
Suite 306
Palm Beach Gardens, FL 33410
561-500-5555
Fax: 561-675-0841
Email: ssmith@smithball.com

**Attorneys for Co-Defendants:**

Tamatha Suzanne Alvarez
Martin, Lister & Alvarez
1655 N. Commerce Pkwy
Suite 102
Weston, FL 33326
954-659-9322
Fax: 954-659-9909
Email: tsalaw@hotmail.com
*Attorney for Austin Danielovich*

Summer Marie Barranco
Purdy, Jolly, Giuffreda, Barranco & Jisa
2455 E. Sunrise Blvd., Suite 1216
Ft. Lauderdale, FL 33304
954-462-6200
Email: summer@purdylaw.com
*Attorney for Pierre Etienne*

Phillip Michael Vogelsang
5530 Beach Blvd
Jacksonville, FL 32207
904-234-1283
Fax: 904-398-7192
Email: phil@fop530.com
*Attorney for Michael Borgen*

Paul A. Daragjati
Paul Daragjati, PLC
4745 Sutton Park Court
Ste 503
Jacksonville, FL 32224
904-379-4117
Email: paul@daragjatilaw.com
*Attorney for William Loayza*

33

## CM/ECF SERVICE LIST CONTINUED

Michael Ross Piper
Johnson Anselmo Murdoch Burke
Piper & Hochman, P.A.
International Building
2455 E Sunrise Boulevard
Suite 1000
PO Box 030220
Fort Lauderdale, FL 33304-0220
954-463-0100
Fax: 954-463-2444
Email: piper@jambg.com
*Attorney for Brandan Stedfelt*

Michael P. Spellman
Spellman Law, P.A.
905 East Park Avenue
Tallahassee, FL 32301
850-601-1983
Email: michael@spellman.law
*Attorney for Christopher Rekdahl*

Leigh Farnell Rosenbloom
Kendall Shaye Manini
Marks Gray, P.A.
1200 Riverplace Boulevard, Suite 800
Jacksonville, FL 32207
(904) 807-2127
(904) 807-2118
Email: lrosenbloom@marksgray.com
Email: kmanini@marksgray.com
*Attorneys for Darien Thomas*