UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

JUNEL POCHETTE, individually and as
Personal Representative of the Estate
of MARCIA MAY POCHETTE, et al.,

Plaintiffs,

v. Case No.: 25-cv-81544-JTK

CITY OF WEST PALM BEACH, a Florida
municipal corporation, et al.,

Defendants.
_________________________________/

**INDIVIDUAL OFFICER DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT WITH PREJUDICE WITH INCORPORATED MEMORANDUM OF LAW**

The Individual Defendants, AUSTIN DANIELOVICH, PIERRE ETIENNE, CHRISTOPHER REKDAHL, MICHAEL BORGEN, WILLIAM LOAYZA, BRANDAN STEDFELT, and DARIEN THOMAS (hereinafter "Individual Officer Defendants"), pursuant to Rules 8(a) and 12(b)(6), Federal Rules of Civil Procedure, hereby move to dismiss Counts III – IX, XI – XVII, XXV – XXXI and XXXIII – XXXIX of the Third Amended Complaint ("TAC") [D.E. 70] — with prejudice, for failure to state a claim upon which relief can be granted.[1]

The Plaintiffs have asserted in Counts III – IX and XXV - XXXI claims against the Individual Officer Defendants, each in his individual capacity, for violating the decedents' substantive due process rights under the Fourteenth Amendment to the United States Constitution,

[1] The Third Amended Complaint supersedes the Second Amended Complaint, which the Individual Officer Defendants answered (D.E. 48-53, 62), and requires a fresh responsive pleading. The substantive due process counts now pled against the Individual Officer Defendants appear for the first time in the TAC. In any event, the defense of failure to state a claim upon which relief can be granted was preserved in the Individual Officer Defendants' Answers and may be raised through trial. Fed. R. Civ. P. 12(h)(2).

and in Counts XI – XVII and XXXIII - XXXIX claims for conspiracy to violate civil rights under 42 U.S.C. § 1983. All of these claims are due to be dismissed because the Plaintiffs' claims against the Individual Officer Defendants are nothing more than state law wrongful death claims cloaked in the facade of constitutional allegations — a claim Florida law provides for, and which Plaintiffs themselves have pled against the City of West Palm Beach on the very same facts.

## FACTUAL ALLEGATIONS

The factual allegations taken from Plaintiffs' TAC can be divided into three separate categories: (1) allegations against all DEFENDANTS; (2) allegations against DRIVER DEFENDANTS; and (3) allegations against PASSENGER DEFENDANTS.[2]

1. AGAINST ALL DEFENDANTS

On July 30, 2024, seven West Palm Beach Police Department officers, in three vehicles, pursued a fleeing motorist, Neoni Copeland, after he failed to stop for "a non-criminal vehicular traffic infraction." (D.E. 70 ¶¶ 21, 23).[3] The pursuit lasted approximately ten minutes and spanned twelve to thirteen miles at speeds approaching or exceeding 118 miles per hour. (*Id.* ¶¶ 23, 29, 200). The pursuit ended when Copeland's vehicle collided with a vehicle occupied by the decedents, Marcia May Pochette and Jenice Monique Woods, at an intersection in Boynton Beach, fatally injuring both. (*Id.* ¶¶ 25–26).

[2] DRIVER DEFENDANTS are: Rekdahl, Etienne, and Danielovich. PASSENGER DEFENDANTS are Borgen, Thomas, Loayza, and Stedfelt.

[3] The Individual Officer Defendants dispute the factual allegations in the TAC but understand that for the purposes of ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., a trial court will consider the TAC's allegations as true and construe them in the light most favorable to the Plaintiffs. *Cinotto v. Delta Air Lines Inc.*, 674 F.3d 1285, 1291 (11th Cir. 2012).

2. AGAINST DRIVER DEFENDANTS

The TAC alleges that the Driver Defendants "participated in, continued, assisted, encouraged, failed to stop, and/or otherwise engaged in a high-speed vehicular pursuit...while operating...[a vehicle]". (DE 70, ¶¶131, 147, 163, 363, 379, 395). The TAC further alleges that the Driver Defendants, "undertook and continued the high speed vehicular pursuit with a purpose to cause harm unrelated to the legitimate object of arrest." (DE 70, ¶¶ 135, 151, 167, 367, 383, 399). Lastly, the TAC alleges that, "following a high speed pursuit...the officers made no effort whatsoever to apprehend Copeland after the crash." (DE 70, ¶¶ 136, 152, 168, 368, 384, 400).

As to the Defendant Drivers, the TAC merely recites the legal standard from *County of Sacramento v. Lewis*, 523 U.S. 833, (1998) in a speculative and conclusory manner, failing to plead sufficient factual matter to support a substantive due process claim.

3. AGAINST PASSENGER DEFENDANTS

The TAC's factual allegations against the Passenger Defendants are sparse. They were not driving any vehicle: for example, the TAC alleges Loayza was "a passenger in the unmarked West Palm Beach Police Department Dodge Durango SUV being driven by PIERRE ETIENNE." (*Id.* ¶ 18; *see also Id.* ¶¶ 17, 19, 20, 179, 195, 211, 227, 411, 427, 443 and 459). The TAC alleges that the Passenger Defendants, "joined, participated in, continued, assisted, encouraged, and/or otherwise engaged in" the pursuit, and that he "failed to intervene in" it "despite having both the authority and the opportunity to do so." (*Id.* ¶¶ 179, 183, 195, 199, 211, 215, 227 and 231). The TAC further alleges the pursuit was conducted without required radio communication, supervisory notification, or body-worn camera activation, in violation of the Department's written pursuit policy. (*Id.* ¶¶ 181, 187, 197, 203, 213, 219, 229 and 235). Finally, the TAC alleges that after the crash, the vehicles that the Passenger Defendants were riding in "drove past the crash scene without

stopping," and that the Passenger Defendants failed to stop, render aid, summon emergency medical assistance, notify dispatch, report the crash, or remain at the scene. (*Id*. ¶¶ 188-189, 204–205, 220-221, 236-237, 420-421, 436–437, 452-453 and 468-469).

Notably, while the TAC alleges that each of the three officers who drove the pursuing vehicles "undertook and continued the high-speed vehicular pursuit with a purpose to cause harm unrelated to the legitimate object of arrest" (*See Id*. ¶¶ 135, 151, 167; *accord Id*. ¶ 367), the TAC makes no such allegation against the Passenger Defendants. Instead, the TAC alleges only that their "participation in the pursuit was unrelated to any legitimate law enforcement objective," an inference Plaintiffs draw from the officers' failure to apprehend Copeland after the crash. The TAC alternatively asserts, they acted "with deliberate indifference" in circumstances where "actual deliberation was practical." (*Id*. ¶¶ 184, 186, 200, 202, 216, 218, 232, 234, 432, and 434).

**ARGUMENT**

## I. MOTION TO DISMISS STANDARD

To state a claim, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." To satisfy this standard, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In ruling on a motion to dismiss under Rule 12(b)(6), the complaint must be accepted as true and viewed in the light most favorable to the plaintiff. *Burban v. City of Neptune Beach*, 920 F.3d 1274, 1278 (11th Cir. 2019). Although a court must accept well-pled facts as true, it is not required to accept a plaintiff's legal conclusions. *Iqbal*, 556 U.S. at 678. Nor is a court required to

draw the plaintiff's inferences. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009). Indeed, allegations showing "[t]he mere possibility the defendant acted unlawfully [are] insufficient to survive a motion to dismiss." *Id.* at 1261.

Although the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim, a court may nonetheless dismiss a complaint on a dispositive issue of law. *Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005). Additionally, where the facts alleged are conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts, the complaint may be subject to dismissal. *Davila v. Delta Airlines, Inc.*, 326 F.3d 1183 (11th Cir. 2003). Dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue that precludes relief. *See Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

Armed with the guidance provided by the Supreme Court in *Iqbal*, the Eleventh Circuit has instructed that "[a] district court may properly dismiss a complaint if it rests only on conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts." *Magwood v. Sec'y, Florida Dep't of Corr.*, 652 F. App'x 841, 843 (11th Cir. 2016) (citation and quotation omitted). "A complaint is insufficient if it 'tenders naked assertions devoid of further factual enhancement.'" *Town of Gulfstream v. O'Boyle*, 654 F. App'x 439, 442-443 (11th Cir. 2016) (quoting *Iqbal*, 550 U.S. at 570). "Importantly, the Court held in *Iqbal*, as it had in *Twombly*, that courts may infer from the factual allegations in the complaint "obvious alternative explanation[s]," which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer. *Iqbal*, 550 U.S. at 1951–52 (*quoting Twombly*, 550 U.S. at 567); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). Plaintiffs' Third Amended Complaint

contains only conclusory allegations of an alleged substantive due process violation and conspiracy which are not supported by sufficient facts.

## II. COUNTS III-IX AND XXV - XXXI FAIL TO ESTABLISH A SUBSTANTIVE DUE PROCESS VIOLATION.

Fundamentally, this case sounds in wrongful death under Florida law, and to be clear, the Plaintiffs have pled it that way. The TAC's state-law wrongful death counts allege that the Individual Officer Defendants, "acted negligently and within the course and scope of their employment," and seek wrongful death damages from the City on that basis. (D.E. 70 ¶¶ 111, 121). Counts III – IX and XXV - XXXI take the same facts and attempt to convert them into constitutional violations. But the Eleventh Circuit has stated it takes "seriously the Supreme Court's caution against expanding the concept of substantive due process." *Waddell v. Hendry Cty. Sheriff's Office*, 329 F.3d 1300, 1304 (11th Cir. 2003). The Court further cautioned:

> The Due Process Clause was intended to prevent government officials from abusing their power or employing it as an instrument of oppression. The substantive component of the Due Process Clause protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them. But the Fourteenth Amendment must not be used through section 1983 as a font of tort law to convert state tort claims into federal causes of action. Nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.

*Id.* at 1305 (internal citations and quotes omitted). In the past, the state could be liable for failure to protect victims from harm caused by third parties if through affirmative acts, it put the victim in special danger of harm, but the "special relationship" or "special danger" doctrines no longer control. *See White v. Lemacks*, 183 F.3d 1253, 1257–59 (11th Cir. 1999). Under current Eleventh Circuit law, conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional

sense. *Waddell*, 329 F.3d at 1305 (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 128 (1992)). In contrasting this standard with conventional tort liability, the Supreme Court has:

> …rejected the lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct and [has] held that the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.

*County of Sacramento v. Lewis*, 523 U.S. 833, 848–49 (1998).

### A. *Lewis* controls: a police pursuit violates substantive due process only where the officer acts with a purpose to cause harm, and no such purpose is — or could be — alleged, particularly against the Passenger Defendants.

In *County of Sacramento v. Lewis,* 523 U.S. 833, the Supreme Court dealt with facts directly analogous to those articulated here. The issue there was whether the decedent's estate articulated a violation of the substantive due process clause of the Fourteenth Amendment, where the decedent, an innocent 16-year-old passenger of the fleeing vehicle, was killed during a high-speed police pursuit. *Id.* at 837. The Court held that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressable by an action under § 1983." *Id.* at 854. Only "a purpose to cause harm unrelated to the legitimate object of arrest" will "satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation" in the pursuit context. *Id.* at 836.

The Plaintiffs know this is the standard. As to the Driver Defendants who drove the pursuing vehicles, the TAC recites – in identical, conclusory language – that each "undertook and continued the highspeed vehicular pursuit with a purpose to cause harm unrelated to the legitimate object of arrest." (D.E. 70 ¶¶ 135, 151, 167). As to the Passenger Defendants, the TAC does not make even that conclusory allegation. Nowhere in Counts VI – IX or XXVIII - XXXI is it alleged that the Passenger Defendants intended to harm the decedents, Copeland, or anyone else. That omission is dispositive under *Lewis*.

What Plaintiffs allege instead is that the Passenger Defendants, "participation in the pursuit was unrelated to any legitimate law enforcement objective," an inference they draw from the officers' failure to apprehend Copeland after the crash. (*Id*. ¶¶ 184, 200, 216, 232, 416, 432, 448 and 464). This is a legal conclusion masquerading as fact (*see Davila*, *supra*), and it is contradicted by the TAC's own allegations where it states that the officers pursued a motorist who fled after committing "a non-criminal vehicular traffic infraction." (*Id*. ¶¶ 21, 23, 179, 195, 211, and 227). Attempting to stop and apprehend a fleeing traffic violator is a legitimate law enforcement objective and it is precisely the "legitimate object of arrest" *Lewis* describes. 523 U.S. at 836. That the officers allegedly conducted the pursuit in violation of departmental policy does not transform a tort claim into a constitutional one, as the Constitution does not enforce police general orders, and "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Lewis,* 523 U.S. at 849.

On the other hand, courts have allowed substantive due process claims to proceed where the complaint alleged that the officer acted with a purpose to injure the plaintiff untethered to any legitimate object of arrest. *See, e.g., Estate of Wondercheck v. State*, No. 4:06CV3087, 2006 WL 3392185, at *1 (D. Neb. Oct. 18, 2006) (allegations that the pursuing officer bore personal animosity toward the decedent and chased him for that reason were "just barely" enough to state a claim under *Lewis*); *Black v. City of Blue Ash*, No. 1:08–cv–00584, 2009 WL 799063 (S.D. Ohio Mar. 23, 2009) (passenger stated a claim against the officer who began the chase where that officer falsely broadcast that the driver had tried to ram him and announced, "I am going to take this guy out if I get a chance," thereby directing his colleagues' deadly force at the car); *Spencer v. City of West Palm Beach*, No. 15–CV–80019, 2015 WL 4651089, at *1 (S.D. Fla. Aug. 5, 2015) (plaintiff stated a claim where the officer allegedly drove his unmarked car into the decedent's motorcycle

intending to injure or kill him, causing a fatal crash into a tree); *Patterson v. Walden*, No. 13–0109–WS–B, 2013 WL 3153761, at *4 (S.D. Ala. June 18, 2013) (plaintiff stated a claim where the officer, pursuing a mere speeding violation, tailgated the fleeing car at high speed and rear-ended it atop an elevated railroad crossing, sending it airborne and flipping it into a ditch). What ties these cases together is a defendant alleged to have personally aimed harm at a particular individual: three of the four officers were behind the wheel and used their vehicles as instruments of force, and the fourth deliberately fed his colleagues a lie calculated to draw deadly force onto a specific car and its occupants. In each instance the officer's own conduct, words, or motive supplied the required purpose to injure. Nothing comparable is alleged against the Individual Officer Defendants. The Passenger Defendants drove no vehicles, gave no directions to anyone who did, while none of the Individual Officer Defendants said anything about harming anyone, and they are not alleged to have known of, much less harbored, any animus toward any person involved.

**B. Plaintiffs' alternative "deliberate indifference" theory is foreclosed by *Lewis* itself.**

Anticipating that they cannot satisfy the purpose-to-harm standard, Plaintiffs plead "[i]n the alternative" that Individual Officer Defendants acted "with deliberate indifference to the known and obvious risk" of the pursuit, in circumstances where "actual deliberation was practical" because the pursuit was "prolonged." (D.E. 70 ¶¶ 138, 154, 170, 186, 202, 218, 234, 370, 386, 402, 418, 434, 450 and 466). *Lewis* forecloses this theory. *Lewis* was itself a pursuit case, and the Court granted certiorari precisely to resolve whether deliberate indifference or reckless disregard supplies the standard of fault in police pursuits. 523 U.S. at 839–40; *see also Id*. at 855–56 (Rehnquist, C.J., concurring) (quoting the question presented). The Court rejected both. Because the term "deliberate indifference" presupposes an opportunity to deliberate, the Court explained,

that standard is "sensibly employed only when actual deliberation is practical," as in ordinary pretrial custody, where forethought about a detainee's welfare is not merely feasible but obligatory. *Id*. at 851. An officer confronting a fleeing motorist stands in the opposite position. His obligations "tend to tug against each other" as he must restore order without exacerbating it, acting decisively and with restraint at the same moment, and his decisions must be made "in haste, under pressure, and frequently without the luxury of a second chance." *Id*. at 853 (*quoting Whitley v. Albers*, 475 U.S. 312, 320 (1986)). The Court therefore drew its analogy not to ordinary custody but to a prison riot, where the Eighth Amendment demands a purpose to cause harm rather than mere indifference, and held that the same showing is required in a pursuit case. Chases conducted "with no intent to harm suspects physically or to worsen their legal plight" do not give rise to Fourteenth Amendment liability. *Id*. at 853–54. In the circumstances of a pursuit, where unforeseen events demand an officer's instant judgment under the pull of competing obligations, even recklessness falls short; only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the shocks-the-conscience test. *Id*. at 836, 853.

A pursuit does not convert into a custodial, “deliberation” setting because it lasted ten minutes rather than two. The standard turns on the nature of the situation, not on a stopwatch. Indeed, the Eleventh Circuit has specifically stated that “deliberate indifference is insufficient to constitute a due-process violation in a non-custodial setting.” *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1377 (11th Cir. 2002). The facts here are indeed tragic, but the decedents were never seized, arrested, or in any form of state custody. The Plaintiffs’ repeated, conclusory boilerplate “deliberation was practical” allegation is an attempt to plead around controlling Supreme Court precedent, and fails as a matter of law.

### C. There is no cognizable "failure to intervene" theory against a passenger in a vehicular pursuit.

Counts VI - IX and XXVIII - XXXI allege that the Passenger Defendants "failed to intervene" in the pursuit "despite having both the authority and the opportunity to do so." (D.E. 70 ¶¶ 183, 199, 215, 231, 415, 431, 447, 463). In the Eleventh Circuit, an officer's duty to intervene arises where the officer is present at, and fails to take reasonable steps to stop, another officer's use of excessive force – a Fourth Amendment doctrine. *See Priester v. City of Riviera Beach*, 208 F.3d 919, 924 (11th Cir. 2000). No case extends failure-to-intervene liability to an officer riding as a passenger during a vehicular pursuit under the Fourteenth Amendment. And the theory fails for a more basic reason: liability for failing to intervene exists only where the underlying conduct was itself unconstitutional. Under *Lewis*, the drivers' pursuit of Copeland, which was undertaken without any alleged intent to harm, violated no constitutional right. There was, accordingly, no constitutional violation for the Passenger Defendants to "intervene" against, even if a passenger had some recognized legal means of terminating another officer's driving.

### D. The post-crash failure-to-render-aid allegations cannot support a substantive due process claim.

Plaintiffs allege that after the crash, the Individual Officer Defendants failed to stop, render aid, summon emergency medical assistance, or report the crash. (D.E. 70 ¶¶ 140-41, 156-57, 172-73, 188-89, 204–05, 220-21, 236-37, 372-73, 388-89, 404-05, 420-21, 436–37, 452-53, 468-69). However, there is no constitutional right to be rescued or protected by the police. As the Seventh Circuit framed the issue four decades ago in *Bowers v. DeVito*:

> There is a constitutional right not to be murdered by a state officer, for the state violates the Fourteenth Amendment when its officer, acting under color of state law, deprives a person of life without due process of law. But there is no constitutional right to be protected by the state against being murdered by criminals or madmen. It is monstrous if the state fails to protect its residents against such predators but it does not violate the due process clause of the Fourteenth

> Amendment or, we suppose, any other provision of the Constitution. The Constitution is a charter of negative liberties; it tells the state to let people alone; it does not require the federal government or the state to provide services, even so elementary a service as maintaining law and order.

686 F.2d 616, 618 (7th Cir. 1982) (internal citations omitted). The United States Supreme Court adopted the same principle in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 195 (1989): "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security."

A governmental duty to provide medical care arises only in custody: the due process clause requires governmental agencies to provide medical care to arrestees and detainees injured "while being apprehended by police." *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244–45 (1983); *Thomas v. Town of Davie*, 847 F.2d 771, 772–73 (11th Cir. 1988). The decedents were never arrested, detained, or seized; they were third parties to the pursuit. Leaving the scene of a crash may violate Florida's criminal statutes and Department policy — and Florida law supplies the remedy for the deaths alleged here: the Florida Wrongful Death Act, which Plaintiffs have invoked against the City in Counts I, II, XXIII, and XXIV, including counts predicated specifically on the officers' alleged "negligent failure to render or summon aid following the crash." (D.E. 70 ¶ 120). A statutory or policy violation, however, is not a constitutional one. *Waddell*, 329 F.3d at 1305.

## III. IF THE COURT FINDS THAT THE TAC PROPERLY ASSERTS A PLAUSIBLE CLAIM FOR RELIEF UNDER THE FOURTEENTH AMENDMENT, THE INDIVIDUAL OFFICER DEFENDANTS ARE STILL ENTITLED TO QUALIFIED IMMUNITY.

A public official performing a discretionary function enjoys qualified immunity in a civil action for damages provided his or her conduct does not violate clearly established federal or

constitutional rights of which a reasonable person should have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The immunity is "immunity from suit, rather than a mere defense to liability" and it is "effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsythe*, 472 U.S. 511, 526 (1985). Qualified immunity can be granted before discovery and "should be resolved at the earliest possible stage of litigation." *Anderson v. Creighton*, 483 U.S. 635 (1987). The driving force behind the creation of the qualified immunity doctrine was a desire to ensure that "insubstantial claims against government officials [will] be resolved prior to discovery." *Id.* at 640, n.2.

As qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), questions of qualified immunity "must be resolved at the earliest possible stage in litigation." *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (internal citations omitted); *see also Miller v. Palm Beach County Sheriff's Office*, 129 F.4th 1329, 1334 (11th Cir. 2025). As a result, "an entitlement to qualified immunity raised on a motion to dismiss *will* be granted if the complaint fails to allege the violation of a clearly established constitutional right." *Id.* at 1333-34 (internal citations omitted). Although "the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be ... raised and considered on a motion to dismiss." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (citing *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)); *see also Trotter v. Shull*, 720 F. App'x 542, 543 (11th Cir. 2017).

To be entitled to qualified immunity, an official must first establish that his conduct was within the scope of his discretionary authority. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Here, the Individual Officer Defendants were performing their duty as sworn West Palm Beach police officers assigned to a proactive street-crime unit, so there should not be any

reasonable dispute that they acted within their discretionary authority. The burden then shifts to the Plaintiffs to demonstrate that qualified immunity is not appropriate using the two-prong test established by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 201 (2001): first, do the facts alleged show the officer's conduct violated a constitutional right; and second, was the right clearly established at the time of the violation. *Id.* The court must undertake the second inquiry "in light of the specific context of the case, not as a broad general proposition." *Id.* Lower courts are permitted to exercise their discretion in deciding which of the qualified immunity prongs to address first. *Pearson v. Callahan*, 555 U.S. 223 (2009).

As argued above, the Plaintiffs have not stated a claim for a violation of the Fourteenth Amendment, so the analysis should end there. Assuming the Court finds that a violation of a constitutional right has been alleged based on the Plaintiffs' version of the facts, the next question is whether the right was clearly established on July 30, 2024. In this circuit, whether the law is clearly established should be of little doubt to the official: "[p]re-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion… that what defendant is doing violates federal law in the circumstances." *Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821 (11th Cir. 1997). A plaintiff must (1) cite to similar case law that would have put police on notice; (2) show a broader, clearly established principle; or (3) show that the violation is so obvious that there is no need for prior case law. *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005).

The question here is simple:

> On July 30, 2024, was the law in the Eleventh Circuit clearly established that a police officer involved in an unauthorized pursuit of a fleeing traffic violator, and who is not alleged to have intended harm to anyone, violates the substantive due process rights of third parties by failing to stop or make the driver stop, or by failing to stop and render aid to crash victims who were never in custody?

The answer is no. No such case exists, or could exist, since such a proposition runs contrary to *Lewis*, *DeShaney*, and this circuit's jurisprudence. The question above constitutes, at most, negligence, and as stated above, Florida tort law is designed for this set of facts.

Under methods (2) and (3), the court must look for "obvious clarity" – "a principle or provision so clear that, even without specific guidance from a decision involving materially similar facts, the unlawfulness of the officer's conduct is apparent." *Hughes v. Locure,* 166 F.4th 121, 128 (11th Cir. 2026) (citing *Powell v. Snook,* 25 F. 4th 912, 920 (11th Cir. 2022)). In *Hughes,* the estate of a passenger in a fatal motor vehicle accident brought a Section 1983 substantive due process claim against a deputy who, while off duty[4], drove his police truck at a high speed at night without headlights and while intoxicated. The court held that as egregious as the deputy's conduct may have been, it did not rise to the level of "obvious clarity." *Id.* at 129-30. In doing so, the court reviewed previous caselaw involving police-initiated automobile accidents, including *Cannon v. Taylor*, 782 F.2d 947, 950 (11th Cir. 1986) (no 1983 claim for person injured in automobile accident caused by "the negligent, or even grossly negligent, operation" of the vehicle by the policeman in the line of duty), and *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) (even if officer was grossly negligent in excessively speeding in a non-emergency situation, it still did

[4] The *Hughes* court reached the issue of qualified immunity in spite of these facts because Plaintiff did not appeal and therefore abandoned the District Court's finding that the deputy was acting within his discretionary authority. *Id*. at 127.

"not transform a state tort claim into a constitutional deprivation.")[5]. Similarly here, the alleged actions of the Individual Officer Defendants do not rise to the obvious clarity level.

In addition, the court in *Hughes* drew the distinction between conduct which "shocks the conscience" and the notion of an "obviously clear" constitutional violation, stating, "'Shocks the conscience' is the standard for assessing the egregiousness of the state actor's conduct on the spectrum of potential tort liability. . . . The 'obviously clear' inquiry, by contrast, is about the relationship of the state actor's conduct to the state of constitutional law." 166 F.4th at 129-30 (citations omitted).

The Individual Officer Defendants should be granted qualified immunity as to Counts III-IX and XXV - XXXI.

## IV. COUNTS XI – XVII AND XXXIII - XXXIX FAIL TO STATE A CLAIM FOR CONSPIRACY UNDER § 1983.

Counts XI – XVII and XXXIII - XXXIX allege that the Individual Officer Defendants "reached an understanding and agreement, either explicitly or implicitly," to initiate an unauthorized pursuit, disengage body-worn cameras, avoid radio communication, and refrain from reporting the crash. (D.E. 70 ¶¶ 255, 260, 265, 270, 275, 280, 285, 487, 492, 497, 502, 507, 512, 517). These counts fail for four independent reasons.

[5] The court further opined, "Though these situations may be factually distinct, we cannot cast them aside in our 'obvious clarity' analysis. Where precedent injects such uncertainty, it does not follow logically that the complained of offense 'so obviously violates th[e] [C]onstitution.' *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). Indeed, when caselaw indicates that a certain type of conduct does not rise to the level of a constitutional violation, officials cannot possibly be on notice that the conduct *is* a constitutional violation—and certainly not with obvious clarity. . . . The existence of this caselaw casting doubt on the 'obvious clarity' of Moss's claimed right—and, indeed, disclaiming such a right altogether—necessarily means that the right was not clearly established at the time of the violation." *Hughes,* 166 F.4th at 129 (citations omitted).

*First*, a plaintiff may state a § 1983 conspiracy claim only by showing that the conspiracy "resulted in the actual denial of some underlying constitutional right." *Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010); *GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998), *overruled in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). As demonstrated in Section II, the TAC alleges no underlying Fourteenth Amendment violation by the Individual Officer Defendants. The conspiracy counts fall with the substantive counts.

*Second*, the conspiracy allegations are impermissibly conclusory. A complaint alleging conspiracy "must inform the defendants of the nature of the conspiracy which is alleged," and "conclusory, vague, and general allegations of conspiracy may justify dismissal." *Fullman v. Graddick*, 739 F.2d 553, 556–57 (11th Cir. 1984). An agreement reached "either explicitly or implicitly," at no alleged time or place and by no alleged communication, is not a pled fact — it is a label. At most, the TAC describes seven officers committing parallel violations of the same pursuit policy, and parallel conduct without more does not plausibly suggest a meeting of the minds. *Twombly*, 550 U.S. at 556–57.

*Third*, the alleged agreement cannot have caused the injury for which Plaintiffs seek relief. The overt acts alleged in furtherance of the "conspiracy" are substantially post-crash: failing to report, concealing the pursuit, and "evad[ing] accountability." (D.E. 70 ¶¶ 255, 260, 265, 270, 275, 280, 285, 487, 492, 497, 502, 507, 512 and 517). The damages sought, however, are wrongful death damages flowing from the crash itself. (*Id.* ¶¶ 258, 263, 268, 273, 278, 283, 288, 490, 495, 500, 505, 510, 515 and 520). An after-the-fact concealment, whatever else it may be, could not have caused deaths that had already occurred. Plaintiffs plead no denial-of-access claim — nor

could they, having obtained the State Attorney's investigative file, video, and vehicle-tracking data, and having timely filed this action. (*See Id*. ¶¶ 26–29).

*Fourth*, the intracorporate conspiracy doctrine bars these counts. "[U]nder the intracorporate conspiracy doctrine, a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation," and the doctrine applies to public entities and their personnel, including police officers accused of conspiring among themselves under § 1983. *Grider*, 618 F.3d at 1261; *Rehberg v. Paulk*, 611 F.3d 828, 854 (11th Cir. 2010), *aff'd*, 566 U.S. 356 (2012). All seven alleged conspirators are West Palm Beach Police Department officers — employees of a single municipal entity — and Plaintiffs themselves plead that the officers acted "within the course and scope of their employment." (D.E. 70 ¶¶ 111, 121, 129, 145, 161, 177, 193, 209, 225, 361, 377, 393, 409, 425, 441 and 457). They cannot, as a matter of law, conspire among themselves.

**V. DISMISSAL SHOULD BE WITH PREJUDICE.**

The TAC is Plaintiffs' fourth pleading. The Court has already dismissed one complaint as an impermissible shotgun pleading [D.E. 6], granted Plaintiffs "one final opportunity to amend," and ordered that "[n]o further amendments by Plaintiffs will be authorized." [D.E. 69]. A district court is not required to grant a counseled plaintiff leave to amend *sua sponte*. *Wagner v. Daewoo Heavy Indus. Am. Corp*., 314 F.3d 541, 542 (11th Cir. 2002) (*en banc*). Consistent with that rule, the Eleventh Circuit has "never required district courts to grant counseled plaintiffs more than one opportunity to amend a deficient complaint," nor has it concluded that "dismissal with prejudice is inappropriate where a counseled plaintiff has failed to cure a deficient pleading after having been offered ample opportunity to do so." *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc*., 673 F. App'x 925, 930 (11th Cir. 2016) (per curiam) (affirming dismissal with prejudice where a

counseled plaintiff, given leave to clarify its theory of liability, returned with an amended complaint that failed to do so). The defects identified above are legal, not verbal and no re-drafting can either supply a purpose to harm that the facts do not support, place the decedents in custody, or un-employ the alleged conspirators. Dismissal of Counts III – IX, XI – XVII, XXV – XXXI and XXXIII - XXXIX should be with prejudice.

**CONCLUSION**

The deaths of Marcia May Pochette and Jenice Monique Woods are truly tragic, but the Individual Officer Defendants are not responsible for them under the United States Constitution. The TAC articulates, at most, a claim under Florida's Wrongful Death Act which the Plaintiffs have pled against the City of West Palm Beach. The Individual Officer Defendants respectfully urge this Honorable Court to dismiss Counts III – IX, XI – XVII, XXV – XXXI and XXXIII - XXXIX of the Third Amended Complaint with prejudice.

Respectfully submitted,

**PAUL DARAGJATI PLC**

*/s/ Paul A. Daragjati*
PAUL A. DARAGJATI, ESQ.
Florida Bar No. 713813
Georgia Bar No. 491830
paul@daragjatilaw.com
ROSE DARAGJATI SZIKSZAY, ESQ.
Florida Bar No. 1025106
rose@daragjatilaw.com
4745 Sutton Park Court, Suite 503
Jacksonville, FL 32224
Telephone: (904) 379-4117
Fax: (904) 379-7108
*Counsel for William Loayza*

**PURDY, JOLLY, GIUFFREDA, BARRANCO & JISA, P.A.**

*s/ Summer M. Barranco*
SUMMER M. BARRANCO
Florida Bar No. 984663
2455 East Sunrise Boulevard, Suite 1216
Fort Lauderdale, Florida 33304
Telephone: (954) 462-3200
E-mail: summer@purdylaw.com;
isabella@purdylaw.com
Attorney for Defendant *Etienne*

**LISTER & ALVAREZ**

*/s/ Tamatha S. Alvarez*
TAMATHA S. ALVAREZ (151467)
tsalaw@hotmail.com
1655 N. Commerce Parkway, Suite 102
Weston, FL 33326
Telephone: (954) 659-9322 Ext 305
Facsimile: (954) 659-9909
*Counsel for Danielovich*

**JOHNSON, ANSELMO, MURDOCH, BURKE, PIPER & HOCHMAN, P.A.**

*/s/Michael R. Piper*
MICHAEL R. PIPER
Florida Bar No.: 710105
2455 East Sunrise Boulevard, Suite 1000
Fort Lauderdale, Florida 33304
Tel: (954) 463-0100
Fax: (954) 463-2444
*Attorneys for Def. Brandan Stedfelt*

**PHILLIP M. VOGELSANG, ESQ.**

*/s/ Phillip M. Vogelsang*
Phillip M. Vogelsang, Esq.
Florida Bar No. 0042771
phil@fop530.com
5530 Beach Blvd
Jacksonville, Florida 32207
(904) 398-7010 telephone
(904) 398-7192 facsimile
*Attorney for Defendant Borgen*

**SPELLMAN LAW, P.A.**

*/s/ Michael P. Spellman*
**MICHAEL P. SPELLMAN**
Florida Bar No. 937975
E-mail: michael@spellman.law
905 East Park Avenue
Tallahassee, Florida 32301
Telephone: (850) 601-1983
*Attorney for Defendant Christopher Rekdahl*

**MARKS GRAY, P.A.**

/s/ *Leigh F. Rosenbloom*
LEIGH F. ROSENBLOOM
Florida Bar No.: 8462
KENDALL S. MANINI
Florida Bar No.: 1025543
1200 Riverplace Blvd., Suite 800
Jacksonville, Florida 32207
Telephone: (904) 398-0900
lrosenbloom@marksgray.com
kmanini@marksgray.com
breeves@marksgray.com
jpopovici@marksgray.com
sallen@marksgray.com
*Attorneys for Defendant Darien Thomas*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 14, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will provide an electronic copy to all attorneys of record.

*/s/ Paul A. Daragjati*
*Counsel for William Loayza*