UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

JUNEL POCHETTE, individually and as
Personal Representative of the Estate
of MARCIA MAY POCHETTE, et al.,

Plaintiffs,

v. Case No.: 25-cv-81544-JTK

CITY OF WEST PALM BEACH, a Florida
municipal corporation, et al.,

Defendants.
_________________________________/

**INDIVIDUAL OFFICER DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE THIRD AMENDED COMPLAINT WITH PREJUDICE**

The Individual Officer Defendants, AUSTIN DANIELOVICH, PIERRE ETIENNE, CHRISTOPHER REKDAHL, MICHAEL BORGEN, WILLIAM LOAYZA, BRANDAN STEDFELT, and DARIEN THOMAS, pursuant to Local Rule 7.1(c), reply in support of their Motion to Dismiss [D.E. 79] the Third Amended Complaint ("TAC") [D.E. 70].

The Plaintiffs' Response in Opposition to Individual Officer Defendants' Motion to Dismiss the Third Amended Complaint with Prejudice ("Response") [D.E. 86] confirms that dismissal is required. It rests the constitutional claims of two innocent third parties on a purpose allegedly aimed at someone else, the fleeing driver; on driving maneuvers that courts have already held are related to the object of arrest, as a matter of law; and on departmental policy violations that cannot, as a matter of law, supply the conscience-shocking purpose *Lewis* requires. It defends the passenger counts by disclaiming the very theory those counts plead, and it defends the conspiracy counts with a Supreme Court decision that granted qualified immunity on the same question.

## I. THE CONDUCT ALLEGED IS RELATED TO THE OBJECT OF ARREST AS A MATTER OF LAW, AND THE *LEWIS* STANDARD DOES NOT SOFTEN FOR BYSTANDERS.

The Response's entire circumstantial case for a "purpose to cause harm" can be reduced to ¶ 24 of the TAC: the pursuing vehicles "repeatedly attempted to cut [Copeland] off," and the pickup truck driven by Rekdahl "was trying to hit him." [D.E. 86 at 4–6]. However, *Lewis* requires a purpose to cause harm, "*unrelated* to the legitimate object of arrest." *County of Sacramento v. Lewis*, 523 U.S. 833, 836 (1998) (emphasis added). The activity relied upon by the Plaintiffs, aggressive vehicle maneuvers directed at a fleeing car, is force employed to stop the suspect – in other words the type of activity that is related to the legitimate object of arrest. In *Helseth v. Burch*, 258 F.3d 867 (8th Cir. 2001) (*en banc*), the officer deliberately rammed a fleeing vehicle with four PIT maneuvers, and the fleeing driver then crashed into an innocent third party. The *en banc* court dismissed the bystander's substantive due process claim, stating:

> The only harm intended by this conduct was incidental to Burch's legitimate objective of arresting Contois. That intent does not, as a matter of law, establish a substantive due process violation.

*Id.* at 872; *accord Davis v. Township of Hillside*, 190 F.3d 167, 171 (3d Cir. 1999) ("deliberate ramming of a fleeing suspect's car 'does not permit an inference of intent to harm'" under *Lewis*). If four intentional rammings are related to arrest as a matter of law, an alleged attempt to "cut off" a fleeing driver cannot be a purpose to cause harm unrelated to arrest.

The Eleventh Circuit applies *Lewis* the same way. In *Gaillard v. Commins*, 562 F. App'x 870, 877 (11th Cir. 2014), the defendant officer turned his police vehicle toward a suspect fleeing on foot, accelerated, and struck and killed him. Yet the Eleventh Circuit reversed the denial of summary judgment on the decedent's substantive due process claim, because no jury could conclude that the officer "intended to hit Gaillard only to hurt him — totally unrelated to effecting an arrest." *Id.* If deliberately striking a suspect fleeing on foot does not evidence a purpose to cause

harm unrelated to arrest, the Plaintiffs' allegation that a pursuing driver "attempted to cut off" Copeland while he fled in a vehicle cannot. *Accord White v. Polk Cnty.*, 207 F. App'x 977, 979 (11th Cir. 2006) (no due process violation absent evidence the officer acted with an intent to harm).

The Response accuses the Motion of "confus[ing] the occasion for a pursuit with the officers' purpose." [D.E. 86 at 5]. It is the Response that confuses aggressive *means of apprehension* with harm for its own sake. The line is drawn by the very cases the Motion cited and the Response now attempts to enlist [D.E. 86 at 5–6]: *Patterson* (officer rear-ended the plaintiff's vehicle atop an elevated crossing), *Spencer* (officer intentionally collided with the decedent's own motorcycle), *Black* (officer announced "I am going to take this guy out"), and *Wondercheck* (personal animosity toward the decedent). In each, the harm was aimed at the claimant and untethered from apprehension, which is why the Motion cited them, and why the Response's embrace of them concedes the governing line – to state a substantive due process violation the Plaintiffs must plead facts supporting a purpose to cause harm, "*unrelated* to the legitimate object of arrest." Nothing comparable is alleged here, and the Plaintiffs' reliance on *Checki v. Webb,* 785 F.2d 534 (5th Cir. 1986) (D.E. 86 at 6) is misplaced for the very reason the *Helseth* Court explained in distinguishing it: the *Checki* plaintiffs were "law-abiding citizens" whom officers hounded for miles for no law enforcement reason, not a fleeing suspect officers were trying to stop. *Helseth*, 258 F.3d at 872.

As articulated in the Officers' Motion, the circumstances here are indeed tragic, but the decedents were not the objects of any alleged aggression. Their estates' claims are their own, and the cases are legion that the intent-to-harm standard applies with full force when the victim is an innocent bystander: the "*Lewis* intent standard applies regardless of whether a suspect or bystander is hurt." *Helseth*, 258 F.3d at 872 (quoting *Feist v. Simonson*, 222 F.3d 455, 462 (8th Cir. 2000));

*accord Onossian v. Block*, 175 F.3d 1169, 1171–72 (9th Cir. 1999); *Trigalet v. City of Tulsa*, 239 F.3d 1150, 1155 (10th Cir. 2001). Courts in this District hold the same. *Fitting v. City of Boynton Beach*, No. 15-cv-80551, 2015 WL 13777177, at *3 (S.D. Fla. July 20, 2015) (bystanders, like suspects, must satisfy the intent-to-harm standard, and deliberate indifference is foreclosed), *report and recommendation adopted*, 2015 WL 13777178 (S.D. Fla. Aug. 5, 2015); *Levy v. City of Hollywood*, 90 F. Supp. 2d 1344, 1347 (S.D. Fla. 2000) (dismissing a decedent's family's § 1983 pursuit claim absent intent to harm). *Lewis* itself denied recovery to an innocent victim, the sixteen-year-old passenger of the fleeing motorcycle. 523 U.S. at 837. The Response cites no decision, and the Individual Officer Defendants have found none, sustaining a bystander's substantive due process claim by transferring to the bystander a purpose allegedly directed at a fleeing suspect.

The Response's remaining inference, that the manner of the pursuit and the officers' post-crash departure show the pursuit "was never about arrest" [D.E. 86 at 5], mistakes irregularity for unconstitutionality. The Supreme Court has been explicit that substantive due process liability does not turn on whether an officer's conduct "offended the reasonableness held up by tort law or the balance struck in law enforcement's own codes of sound practice." *Lewis*, 523 U.S. at 855. A violation of departmental policy is a matter for the department; it is not a constitutional violation, and it does not become one by repetition. *See Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.")

An unauthorized pursuit of a fleeing offender remains, at every moment, a pursuit of a fleeing offender. That the officers allegedly pursued without radio notification, without supervision, and without body-worn cameras speaks to *how* they pursued, in violation of Policy III-25; it says nothing about *why* they pursued, and the only "why" the TAC pleads with facts is

that Copeland fled from a traffic stop. (D.E. 70 ¶¶ 21, 23). *Lewis* asks whether the officer's purpose was harm unrelated to apprehension, not whether the apprehension effort was tidy, authorized, or well documented. Nor can the officers' post-crash conduct retroactively supply a purpose the pursuit itself does not evidence. The culpability *Lewis* requires is measured by the officer's purpose *during* the pursuit, and what the TAC alleges the officers failed to do after the crash — remain, report, and render aid — is the subject of Plaintiffs' own negligence-based counts against the City. (D.E. 70 ¶¶ 119–27, 351–59). What remains of the Response's inference is a bare syllogism: the officers broke the rules, therefore they intended to kill. That is "the mere possibility of misconduct," not a plausible allegation of conscience-shocking purpose, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and Rule 9(b) does not rescue it. *Iqbal* "does not give [a plaintiff] license to evade the less rigid, though still operative, strictures of Rule 8" by pleading intent conclusorily. *Id.* at 686–87.

## II. *LEWIS* FORECLOSES THE "DELIBERATION WAS PRACTICAL" ALTERNATIVE.

The Response's alternative theory, that deliberate indifference governs because this pursuit was "deliberation-rich" [D.E. 86 at 9–10], is a revival of *Feist*, in which a panel of the Eighth Circuit applied deliberate indifference to a six-minute chase because the officer "had ample time to deliberate." *Feist*, 222 F.3d at 464. The Eighth Circuit later took that theory *en banc* and overruled it, holding that such reasoning "eviscerates the holding of *Lewis*" and that the intent-to-harm standard governs all pursuit-based substantive due process claims without regard to the length of the pursuit. *Helseth*, 258 F.3d at 870–71; *accord Trigalet*, 239 F.3d at 1155; *Twp. of Hillside*, 190 F.3d at 170; *Onossian*, 175 F.3d at 1171; *Bingue v. Prunchak*, 512 F.3d 1169, 1176–77 (9th Cir. 2008).

In this Circuit, "deliberate indifference is insufficient to constitute a due-process violation in a non-custodial setting," *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1377 (11th Cir. 2002), and *Hughes v. Locure*, 166 F.4th 121, 128–29 (11th Cir. 2026), granted qualified immunity at the pleading stage on precisely such a deliberate-indifference driving theory. Ten minutes does not convert a high-speed chase into custody, and the decedents were never in custody.

## III. THE PASSENGER COUNTS FAIL ON THE RESPONSE'S OWN TERMS.

Confronted with the absence of any purpose-to-harm allegation against the passengers, the Response disclaims the failure-to-intervene theory, insisting the passenger counts "do not rest on a witness's duty to physically stop the chase," [D.E. 86 at 9], even though each count alleges in terms that the officer "failed to intervene" (D.E. 70 ¶¶ 183, 199, 215, 231). The Plaintiffs now assert a "joint participation" theory, but § 1983 does not impose collective liability. *Iqbal* is clear that "each Government official . . . is only liable for his or her own misconduct." 556 U.S. at 677. Riding as a passenger and declining to key a radio is not an act directed at anyone, much less an act undertaken with a purpose to cause harm.

The Response's own treatment of the passengers proves the point. It emphasizes that "Defendant Borgen rode in the pickup truck that Copeland described as trying to hit him." [D.E. 86 at 9]. That argument concedes that vehicle-specific attribution matters, and it offers nothing for the remaining passengers. As to Loayza, the TAC alleges only that he was a passenger in the Durango (D.E. 70 ¶¶ 18, 195), a vehicle alleged to have done nothing but pursue. Even as to Borgen, presence in a vehicle whose *driver* allegedly maneuvered aggressively attributes the driver's conduct, and the driver's state of mind, to a passenger who is not alleged to have directed, encouraged, or even spoken a word about it. There is no authority for such a theory, and having disclaimed any intervention duty, the Response leaves the passenger counts resting on presence

plus silence, which no court has held violates the Fourteenth Amendment. The Plaintiffs' reliance on *Edwards v. Shanley*, 666 F.3d 1289 (11th Cir. 2012), is misplaced as it is a Fourth Amendment excessive force case enforcing a recognized duty to intervene in force applied to a seized arrestee, the very theory Plaintiffs now disclaim.

## IV. QUALIFIED IMMUNITY: THE RESPONSE ARGUES AT THE WRONG LEVEL OF GENERALITY, AND ITS OWN AUTHORITIES DEFEAT IT.

The Response defines the clearly established right at the highest possible level of generality: *Lewis* governs pursuits, and therefore everything about this pursuit was clearly established. The inquiry, however, "must be undertaken in light of the specific context of the case, not as a broad general proposition," *Saucier v. Katz*, 533 U.S. 194, 201 (2001), and under the Response's own authority only decisions of the Supreme Court, the Eleventh Circuit, or the Florida Supreme Court clearly establish the law. *Hughes*, 166 F.4th at 128. That disposes of Plaintiffs' reliance on *Spencer v. City of West Palm Beach,* No. 15-CV-80019, 2015 WL 4651089 (S.D. Fla. Aug. 5, 2015), a district court order, and one involving an officer who intentionally collided with the decedent's own motorcycle.

*Lewis* clearly establishes liability for a pursuit conducted with a purpose to cause harm unrelated to arrest. As shown above, the TAC does not plead such a pursuit, and as to the passengers it does not plead such a purpose at all. The Response identifies no decision from any court imposing Fourteenth Amendment liability on a non-driving passenger officer in a vehicle pursuit. The Plaintiffs rely on *Fils v. City of Aventura,* 647 F.3d 1272, 1291 (11th Cir. 2011) to fill the void, but Fils only stands for the proposition that the established law governing excessive force doctrine can be applied to a taser as it is to other mechanisms of force.

In contrast *Hughes*, which the Eleventh Circuit decided earlier this year, is dispositive here. In *Hughes*, an intoxicated, off-duty deputy drove his unlit black police truck at roughly seventy

miles per hour down a 25-mile-per-hour road at night, struck a car crossing his path, killed a passenger, and then fled the scene. 166 F.4th at 124–25. The decedent's estate alleged he violated substantive due process by driving "with deliberate indifference to the great risk of harm." *Id*. The Eleventh Circuit reversed the denial of qualified immunity at the pleading stage, holding that because negligent – even grossly negligent – police driving is not a constitutional violation, the right was not clearly established. *See Cannon v. Taylor*, 782 F.2d 947, 950 (11th Cir. 1986); *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996). The Court explained, "conduct may be very bad (and, in fact, shock the conscience), but the state of the law may leave it insufficiently clear that the conduct violates the [C]onstitution." *Id.* at 128–29. If that deputy was entitled to qualified immunity, the Defendant Officer passengers who drove nothing, and are not alleged to have intended harm to anyone, cannot be denied it.

## V. THE CONSPIRACY COUNTS FAIL, AND *ABBASI* INDEPENDENTLY COMPELS QUALIFIED IMMUNITY ON THEM.

*First*, the Response concedes the conspiracy counts stand or fall with the underlying constitutional claims. [D.E. 86 at 17]. They fall together.

*Second*, the "specificity" the Response invokes is a list of the parallel acts themselves; the agreement remains one reached "either explicitly or implicitly," at no alleged time, place, or manner. (D.E. 70 ¶ 255). The inference of synchronized concealment is answered by the TAC's own description of the GHOST unit, whose officers ordinarily "operated in unmarked vehicles and communicated on separate radio channels that were not recorded or monitored by Dispatch." (D.E. 70 at 5 n.2). A covert unit operating covertly is the independent explanation for the parallelism, and parallel conduct with an independent explanation does not plausibly plead agreement. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007).

*Third*, on the intracorporate conspiracy doctrine, the Response overstates the law. The "independent personal stake" exception has never been adopted in the Eleventh Circuit, as *Dickerson v. Alachua Cty. Comm'n*, 200 F.3d 761, 770 (11th Cir. 2000), expressly did "not reach the issue of whether to adopt" it, and *Grider v. City of Auburn* merely found no personal stake on its record, 618 F.3d 1240, 1262–63 (11th Cir. 2010). Even on its own terms, the alleged stake, avoiding departmental discipline, is pled only as to Etienne and Rekdahl, is inherent in the employment relationship rather than independent of it, and cannot bind five officers as to whom no stake is alleged. The criminal-conspiracy exception of *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1034 (11th Cir. 2000) (en banc), is confined to conduct "constituting a criminal conspiracy in violation of the federal criminal code," and *Grider* declined to apply it where, as here, no criminal conspiracy has been charged. *Grider*, 618 F.3d at 1263. The officers here face individual substantive state charges, they have not been charged with any conspiracy, state or federal, and Plaintiffs' invocation of 18 U.S.C. § 241 presupposes the constitutional violation their counts fail to plead.

*Finally*, Plaintiffs' own citation of *Ziglar v. Abbasi*, 582 U.S. 120, 153–54 (2017), decides the qualified immunity question against them. Plaintiffs cite *Abbasi* for the proposition that the intracorporate conspiracy doctrine's application to civil rights conspiracies is an "open" question on which the circuits are divided. [D.E. 86 at 19]. That is precisely why *Abbasi granted qualified immunity* on the conspiracy claim before it. Where the law is open and divided, a reasonable officer could believe the agreement alleged was not actionable, and the law is by definition not clearly established. *Abbasi*, 582 U.S. at 153–54. The Individual Officer Defendants are entitled to qualified immunity on Counts XI–XVII and XXXIII–XXXIX on that ground alone.

## VI. DISMISSAL SHOULD BE WITH PREJUDICE.

The Response's recharacterization of the pleading history is addressed to the wrong order. This Court has already granted Plaintiffs "one final opportunity to amend" and ordered that "[n]o further amendments by Plaintiffs will be authorized." [D.E. 69]. Plaintiffs never sought reconsideration of that order, and their assertion that the officers answered the Second Amended Complaint rather than moving against it, is answered in a sentence: the substantive due process counts did not exist until the TAC. Moreover, discovery cannot cure defects that are legal rather than evidentiary. Plaintiffs' fallback request, embedded in an opposition brief, that any dismissal be without prejudice is itself improper. *See Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.")

## CONCLUSION

For these reasons and those stated in the Motion, Counts III–IX, XI–XVII, XXV–XXXI, and XXXIII–XXXIX of the Third Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

**PAUL DARAGJATI PLC**

*/s/ Paul A. Daragjati*
PAUL A. DARAGJATI, ESQ.
Florida Bar No. 713813
Georgia Bar No. 491830
paul@daragjatilaw.com
ROSE DARAGJATI SZIKSZAY, ESQ.
Florida Bar No. 1025106
rose@daragjatilaw.com
4745 Sutton Park Court, Suite 503
Jacksonville, FL 32224
Telephone: (904) 379-4117
Fax: (904) 379-7108
*Counsel for William Loayza*

**PURDY, JOLLY, GIUFFREDA, BARRANCO & JISA, P.A.**

*s/ Summer M. Barranco*
SUMMER M. BARRANCO
Florida Bar No. 984663
2455 East Sunrise Boulevard, Suite 1216
Fort Lauderdale, Florida 33304
Telephone: (954) 462-3200
E-mail: summer@purdylaw.com;
isabella@purdylaw.com
Attorney for Defendant *Etienne*

**LISTER & ALVAREZ**

*/s/ Tamatha S. Alvarez*
TAMATHA S. ALVAREZ (151467)
tsalaw@hotmail.com
1655 N. Commerce Parkway, Suite 102
Weston, FL 33326
Telephone: (954) 659-9322 Ext 305
Facsimile: (954) 659-9909
*Counsel for Danielovich*

**JOHNSON, ANSELMO, MURDOCH, BURKE, PIPER & HOCHMAN, P.A.**

*/s/Michael R. Piper*
MICHAEL R. PIPER
Florida Bar No.: 710105
2455 East Sunrise Boulevard, Suite 1000
Fort Lauderdale, Florida 33304
Tel: (954) 463-0100
Fax: (954) 463-2444
*Attorneys for Def. Brandan Stedfelt*

**PHILLIP M. VOGELSANG, ESQ.**

*/s/ Phillip M. Vogelsang*
Phillip M. Vogelsang, Esq.
Florida Bar No. 0042771
phil@fop530.com
5530 Beach Blvd
Jacksonville, Florida 32207
(904) 398-7010 telephone
(904) 398-7192 facsimile
*Attorney for Defendant Borgen*

**SPELLMAN LAW, P.A.**

*/s/ Michael P. Spellman*
**MICHAEL P. SPELLMAN**
Florida Bar No. 937975
E-mail: michael@spellman.law
905 East Park Avenue
Tallahassee, Florida 32301
Telephone: (850) 601-1983
*Attorney for Defendant Christopher Rekdahl*

**MARKS GRAY, P.A.**

/s/ *Leigh F. Rosenbloom*
LEIGH F. ROSENBLOOM
Florida Bar No.: 8462
KENDALL S. MANINI
Florida Bar No.: 1025543
1200 Riverplace Blvd., Suite 800
Jacksonville, Florida 32207
Telephone: (904) 398-0900
lrosenbloom@marksgray.com
kmanini@marksgray.com
breeves@marksgray.com
jpopovici@marksgray.com
sallen@marksgray.com
*Attorneys for Defendant Darien Thomas*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 23, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will provide an electronic copy to all attorneys of record.

*/s/ Paul A. Daragjati*
*Counsel for William Loayza*